Joseph E. PAIGE, Plaintiff-Appellant,

v.

Patricia Roberts HARRIS, etc., et al.,
Defendants-Appellees.

No. 77–2204.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1978.
Decided Sept. 12, 1978.

Robert A. Filpi, Chicago, Ill., for plaintiff-appellant.

Martin B. Lowery, Asst. U. S. Atty., Chicago, Ill., for defendants-appellees.

Before SWYGERT, Circuit Judge, MOORE, Senior Circuit Judge,* and SPRECHER, Circuit Judge.

MOORE, Circuit Judge.

Joseph E. Paige appeals from an order entered December 2, 1977 denying his motion for a preliminary injunction and dismissing his complaint for failure to state a claim upon which relief can be granted. The complaint sought to enjoin and restrain the Department of Housing and Urban Development ("HUD") and various officials of

* Senior Circuit Judge Leonard P. Moore of the United States Court of Appeals for the Second Circuit is sitting by designation.

HUD from discharging Paige, as of October 28, 1977, from his position as the Area Counsel for the Chicago Area office of HUD.

## I.

Until September 29, 1977, appellant Paige had served for twenty years as a government attorney. From 1957 to 1969 he was a trial attorney with the Department of Justice. In 1970 he became an attorney with HUD, and on September 8, 1971 he was appointed Area Counsel for the Chicago office. As such, Paige, a non-veteran, occupied a Schedule A position in the excepted service.[1] On September 7, 1977, Elmer C. Binford became Area Director for the Chicago Area Office. Some three weeks later, on September 29, 1977, Binford sent Paige a memorandum advising Paige that he would be terminated not only from his position as Area Counsel, but from all employment at HUD, effective October 28, 1977. The memorandum indicated that Paige had "exhibited inadequate performance" in the areas of "Technical Expertise and Poor Judgment" and "Supervisory Performance".[2] After receiving this notice of termination, Paige was informed by the Chief Administrative Officer for the Chicago Office that he had no internal rights of appeal and no right to submit a statement or evidence in his defense.

On October 26, 1977, Paige filed a Motion for a Temporary Restraining Order and a Complaint for Preliminary and Permanent Injunctive Relief. The complaint alleged that Binford's action was arbitrary, capricious and an abuse of power and discretion; that Binford lacked the authority to discharge Paige; and some of the information on which the dismissal was based was falsified; that Paige had a property interest in his position stemming from HUD Handbook 302.2 entitled "Tenure of Attorneys";[3] that HUD failed to comply with its own rules that no disciplinary action may be taken against a HUD attorney without first bringing the matter to the attention of the General Counsel, with a possible appeal to the Secretary of HUD; and that because of the harm to Paige's reputation, his liberty interest was violated because he was denied a hearing prior to discharge. Both parties agreed to maintain the status quo until November 28, 1977, when the lower court held a hearing on the preliminary injunction.

At the hearing the court did not examine the merits of Paige's discharge.

"We are not going to go into the merits of the discharge, Mr. Murray [Paige's counsel]. I can't see how we can, because it goes to—the only question is that it goes to whether he is entitled—as I see it—the only issue presented to me is, is he entitled to some type of a notice and hearing prior to removal, and some facts may be relevant to that question, but whether he is—I don't think the merits of the discharge are proper subject for my consideration." Trans. of Proc. at 8.

The court determined that only one factual question existed, whether there was a reasonable expectation of a hearing. The court stated:

"As I see it, the only factual question that I am going to have to determine is whether there was a reasonable expectation of a hearing, not—the other matters,

1. The Civil Service Commission is authorized to exempt certain positions from the competitive service. Executive Order 10577, Rule VI, § 6.1, reprinted following 5 U.S.C.A. § 3301. Section 6.2 defines a Schedule A position:
   "Positions other than those of a confidential or policy-determining character for which it is not practicable to examine shall be listed in Schedule A." Executive Order 10577, Rule VI, § 6.2.
2. The alleged factual bases for these charges were that appellant appeared at a hearing, on whether a tax deed should issue, on behalf of a

couple where HUD had no legal liability; that staff members of the Area Counsel's office often went to the Regional Counsel's Office instead of appellant, for advice and services on complex problems; that he failed to supervise clerical staff properly and fulfill other personnel management responsibilities; and that he failed properly to maintain the legal library.

3. Handbook 302.2 provides that its purpose "is to establish a Departmental policy on the acquisition of permanent tenure by attorneys."

whether he had a right to a hearing, the other matters as to sending him the letter stating the cause, that is a question of law, as I see it. The question of whether the agency followed its internal regulations again is a question of law, not a question of fact." Trans. of Proc. at 17. The trial judge, over the objection of Paige's counsel, held that all other questions and evidence were irrelevant to the issue he was hearing. *Id.* at 17–18. Accordingly, Paige introduced various HUD memoranda and manuals concerning the selection of attorneys, disciplinary actions involving attorneys, and responsibilities of attorneys. HUD introduced only one item, an affidavit of the General Counsel of HUD on the issue of whether HUD complied with its own procedures.

On December 2, 1977, the district court entered a Memorandum Opinion and Order denying Paige's Motion for a Preliminary Injunction and dismissing his complaint for failure to state a claim upon which relief could be granted, entering judgment for the defendants. From this judgment Paige appeals.[4]

On appeal Paige argues that the discharge was in violation of due process because the dismissal without a hearing on the merits violated his property rights in continued employment and his liberty interests because his good name and reputation were at stake. He also argues that the discharge, based on false information, was reviewable as being arbitrary and capricious. Finally, Paige contends that since HUD gave him notice of the reasons behind the discharge, HUD must complete the procedure by giving him a hearing.

The government contends that HUD Handbook 302.2 did not create a tenure system for exempt employees of HUD. It argues that no liberty interest was invoked because any information regarding the firing was not to be made public and the reasons for the firing did not create a stigma on Paige's reputation. The government contends that review is not available for "abuse of discretion" because courts only review agency discretion where the employee is in the competitive service. Finally, the government contends that providing Paige with reasons for his discharge was merely a gratuitous gesture which did not confer upon him any additional rights for a hearing.

## II.

For purposes of this appeal, we must determine whether appellant raised a due process claim which would prevent entering a dismissal for failure to state a cause of action.

In recent years, especially since *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court has extended the notion of "protected rights" under the due process clause beyond earlier concepts of "liberty" or "property". The Court "has placed great emphasis both on making it possible for those who deal with the government in any way to rely on any clearly announced rules, and also on reducing the helplessness of persons who are in a dependent relationship to government with respect to basic needs". Tribe, *American Constitutional Law* 515–16 (1977). However, simple employment is not sufficient to create entitlement to continued employ-

---

4. The district court, "construing Defendants' Memorandum In Opposition to Plaintiff's Motion as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure", dismissed the complaint. On December 8, 1977, appellant presented a Motion to Alter Or Amend the Judgment. *See* Fed.R.Civ.Proc. Rule 59(e). The motion challenged the procedure of dismissing the case in which the court may have considered affidavits by the appellees without giving appellant an opportunity to present affidavits. The court denied the motion and stated that its prior ruling was based solely on the sufficiency of the complaint as a matter of law. With regard to all issues but the question of appellant's property interest, on which the hearing was held, we are faced with examining the complaint to determine if it alleges facts, which if proven true, would provide a sufficient basis for relief. Any judgment will accord appellant the liberal construction accorded pleadings under the Federal Rules of Civil Procedure. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 334–35, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).

ment. As stated recently by the District of Columbia Circuit:

"[A]s a threshold requirement the plaintiff in a public employee dismissal case must show that he has either a legitimate entitlement with respect to his job, which would be protected as property under the fifth or fourteenth amendments, or that the dismissal deprives him of a liberty interest protected by those constitutional provisions." *Mazaleski v. Treusdell,* 183 U.S.App.D.C. 182, 190, 562 F.2d 701, 709 (1977) (citation omitted).

In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that no entitlement (and therefore no property interest) existed for a non-tenured college professor. However, such an entitlement to continued employment may be created by statute or by contract. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In the companion case to *Roth, Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 970 (1972), the Supreme Court held that a cause of action was presented by a college professor's contention that he had been denied due process by a decision not to renew his contract. Sindermann had been employed by the college for four years and the Court concluded that he might be able to show

"the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent 'sufficient cause'." *Id.* at 602, 92 S.Ct. at 2700.

The rationale of these cases is that when the decision to discharge a public employee results in either a deprivation of a property interest (e. g., a permanent job), or a deprivation of liberty (e. g., a stigma that operates to foreclose other employment opportunities), due process requires the person to be given notice of the charges and a hearing.

We conclude that appellant possessed a property interest in his continued employment with HUD and this provides sufficient grounds to require a hearing on his discharge. We will first examine the question whether appellant has a protected property interest in the form of job tenure. Second, we will examine the question whether he has a liberty interest arising out of the circumstances of his discharge. Third, we will examine the question whether there existed any procedural protections established by, or binding upon, HUD.

### III.

### A. *Property Interest*

█ A statute or a regulation can confer a property interest in continued employment. Appellant was not protected by the Lloyd-LaFollette Act, 5 U.S.C. § 7501 *et seq.,* as are those in the competitive service. As a non-veteran in the excepted service, appellant has no statutory or regulatory right to a statement of reasons for discharge or adverse action appeal rights. *See* 5 C.F.R. § 752.103(a)(6). *See also Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

However, as indicated in *Perry,* a property interest may be conferred by the terms of employment. "*Perry* is especially pertinent to appellants' property claims in that it demonstrates that the source of a protected property right might be implicit in the overall workings of a particular government employer". *Colm v. Vance,* 186 U.S. App.D.C. 132, 135, 567 F.2d 1125, 1128 (1977). As such, "property interests can result from implied agreements or statutory or administrative procedures governing nonrenewal". *Weathers v. West Yuma County School District R–J–1,* 530 F.2d 1335, 1337 (10th Cir. 1976). *See Burdeau v. Trustees of California State Colleges,* 507 F.2d 770 (9th Cir. 1974).

HUD Handbook 302.2 provides just the type of "rules and understandings" indicated in *Perry* which would justify appellant's "legitimate claim of entitlement to continued employment". The government argues that the Handbook did not establish tenure for HUD attorneys who were exempt employees, but rather the purpose of Handbook 302.2 was to define the rights of HUD attorneys during a reduction in force.

The district court failed to reach this question, but found that there was no showing of a "reasonable reliance by Paige on the alleged *de facto* tenure system". Using a subjective test of reliance, we find that appellant's affidavit was sufficient evidence of reliance, in the absence of anything to the contrary, to avoid a motion to dismiss. However, we do not need to reach that point. We have carefully examined the material presented by both parties and the transcript of the hearing, and we find, using a test of objective expectations, that the Handbook created a presumption of a contractual tenure system which was unrebutted by the government.

In support of the government's contention that the purpose of Handbook 302.2 was to apply only to reductions in force, the government presented documentary proof in the form of Chapter 351, entitled "Reduction in Force", of the Federal Personnel Manual (Feb. 28, 1973).[5] The government argues that since the tenure language of Handbook 302.2 is similar to the language of Chapter 351, then the tenure provisions must apply only to reductions in force.

Handbook 302.2 nowhere mentions that it is in implementation of, or designed to complement, Section 351 relating to reductions in force. Its language indicates that it is providing tenure for certain groups. The front of Handbook 302.2 states:

"TENURE OF ATTORNEYS
September 1973
HUD Staff
A HUD HANDBOOK"

At the very beginning its purpose is stated:

"1. *PURPOSE.* The purpose of this Handbook is to establish a Departmental policy on the acquisition of permanent tenure by attorneys."

5. The Government also presented an affidavit from Frank DiCostanzo, Director of Employment Planning and Standards Division of the Office of Personnel of HUD, which professes that the purpose of Handbook 302.2 was to define "rights of Attorneys during Reduction-In-Force".

6. The definitions of the tenure groups are as follows:

This may be contrasted with "Subchapter 5. Retention Standing" of Chapter 351 of the Federal Personnel Manual. Section 5–1 describes the purpose of the subchapter:

"The decision on which employee stays and which goes in reduction in force depends on several factors. The competitive area and the competitive level are explained in subchapter 4. This subchapter explains the other factors, those that determine an employee's retention standing in his competitive level; tenure group, subgroup, length of service, and performance rating. Together, these factors determine whether an employee is entitled to compete with other employees for retention and, if so, with whom and with what success."

Handbook 302.2, after listing its purpose, discusses the background of tenure. This discussion indicates that granting "permanent tenure is discretionary" with the individual agency. Its only reference to the Federal Personnel Manual is that the Manual requires initial appointments not to be "permanent". This section states:

"2. BACKGROUND. The service requirement for *career tenure* in the competitive service is three years of substantially continuous creditable service. The service requirement for the acquisition of *permanent tenure in the excepted service is discretionary with the agency.* The Federal Personnel Manual requires only that agencies develop appropriate procedures to insure that initial appointment to positions in the excepted service are made on other than a permanent basis." (emphasis supplied).

Handbook 302.2 then defines the tenure groups as categorized into subgroups similar to the definitions used in the Federal Personnel Manual.[6] The policy of HUD

3. *DEFINITIONS.* The Federal Personnel Manual defines tenure groups for employees in the excepted service as follows:

Group I: Permanent employees whose appointments carry no restriction, condition, time limitation or trial period.

Group II: Employees serving trial periods; employees who occupy obli-

with respect to these tenure groups is described, noting that "[s]ince the regulations of the Civil Service Commission do not specify a service requirement for the acquisition of permanent tenure in the excepted service as they do for the competitive service (three years), the practice among the agencies in the conversion of attorneys to permanent status will differ". As an employee with more than three years experience, appellant would be placed into category one, permanent tenure.[7]

The Government argues that HUD Handbook 752.2, "Adverse Personnel Actions Handbook" (October 1974) conflicts with and supercedes Handbook 302.2. Handbook 752.2 does exclude from adverse action protection, non-veterans in the excepted service. However, the fact that Handbook 752.2 does not include appellant is not relevant here. Handbook 752.2 lists its purpose as implementing "Federal statutes and Civil Service Commission regulations" including the Lloyd-LaFollette Act, the Veterans Preference Act, various executive orders, and part 752 of the Civil Service Regulations, 5 C.F.R. Part 752. As such, Handbook 302.2 is applicable only to Civil Service related controls on personnel actions, not to separate sources of rights created by HUD.

Notwithstanding the Government's purported purpose of Handbook 302.2, its wording belies any such purpose. In addition, we find that Handbook 752.2 is simply not relevant to the issue at bar. Thus, we conclude that appellant possessed a property interest in continuing employment with HUD, if not his last position, and is entitled to a hearing where he can challenge the sufficiency of the grounds for his non-retention.

### B. Liberty Interest

■ Appellant's second due process claim is that his discharge resulted in damage "to his professional reputation that would constitute an infringement of his liberty. . ." Appellant's Br. at 21. In *Roth,* the Supreme Court recognized that a "liberty" interest applies to a person in public employment. However, here the facts which appellant alleged in his complaint are not sufficient to show that he has been deprived of a "liberty" interest. As stated by this Circuit:

> "The concept of liberty recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities." *Lipp v. Board of Education of City of Chicago,* 470 F.2d 802, 805 (7th Cir. 1972).

*See, e. g., Mazaleski v. Treusdell, supra,* 183 U.S.App.D.C. at 193, 562 F.2d at 712;

| | |
|---|---|
| Group II —Cont'd | gated positions; employees whose tenure is equivalent to career-conditional appointment in the competitive service. |
| Group III: | Employees whose tenure is indefinite, with a specific time limitation of more than one year, i.e. Law Clerk whose appointment is for the maximum 14 months. |
| Group Ø: | Noncompeting employees whose appointment is for less than one year. |
| Trial Period: | Time during which continuous evaluation of an employee's on-the-job performance is accomplished, as a further check against the selection devices used prior to appointment. Em- |
| Trial Period —Cont'd | ployees may be separated during the trial period without recourse to the usual separation and appeal procedures if work performance or conduct is not satisfactory. |

7. The Civil Service Regulations define tenure as follows:

" 'Tenure' means that period of time an employee may reasonably expect to serve under his current appointment. It is granted and governed by the type of appointment under which the employee is currently serving without regard to whether he has a competitive status or whether his appointment is in a competitive position or in an excepted position." 5 C.F.R. § 210.102(b)(17).

*Weathers v. West Yuma County School District R–J–1,* 530 F.2d 1335, 1338–39 (10th Cir. 1976); *Sims v. Fox,* 505 F.2d 857, 863 (5th Cir. 1974) *(en banc), cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975).

With regard to the first of these two liberty interests, the Supreme Court stated in *Roth* :

> "The State, in declining to rehire [him], did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case." *Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707.

The Supreme Court has recently narrowed the protection given to a person's general reputation in the community. *See Paul v. Davis,* 424 U.S. 693, 701, 706, 710–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Furthermore, the charges of inadequate performance in the areas of "Technical Expertise and Poor Judgment" and "Supervisory Performance" and the alleged facts behind the charges, do not rise to the level of the "degrading" and "unsavory" charges which would "expose him to public embarrassment and ridicule . . . ." *Wisconsin v. Constantineau,* 400 U.S. 433, 436–37, 91 S.Ct. 507, 509, 27 L.Ed.2d 515 (1971). *See Mazaleski v. Treusdell, supra,* 183 U.S.App.D.C. at 193, 562 F.2d at 712.

The second of the two liberty interests is whether the action by HUD has imposed upon appellant "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities". *Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707. The Supreme Court noted that "[m]ere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportuni-

ties amounting to a deprivation of 'liberty'." *Id.* at 574 n.13, 92 S.Ct. at 2708. The cases cited in *Roth* "involved charges of chronic alcoholism or association with subversive organizations, and . . . by 'stigma' the Court was 'thinking of something considerably graver than a charge of failure to perform a particular job lying within the employee's power to correct.' [*Russell v. Hodges,* 470 F.2d 212 (2d Cir. 1972)] at 217." *Schwartz v. Thompson,* 497 F.2d 430, 432 (2d Cir. 1974). The charges which form the basis for appellant's discharge, and which he alleges are false, do not create the type of stigma contemplated in *Roth* and its progeny. To the contrary, the charges relate only to appellant's performance as being less than acceptable. Dismissals for reasons similar to those given in appellant's discharge generally have not been held as violative of a due process liberty interest.[8] We conclude that the district court acted properly in dismissing the claim of appellant alleging deprivation of his liberty interests.

■ Finally, we come to the claim that HUD failed to follow its own rules and that appellant's discharge was arbitrary and capricious. In light of our disposition of the property interest question, we will address this point only briefly. To the extent that a person has no due process rights in continued public employment, we will not review a discharge, as violative of substantive due process, simply based on the action being arbitrary and capricious. *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1 (7th Cir. 1974); *Miller v. School Dist. No. 167,* 495 F.2d 658 (7th Cir. 1974). Nor does providing appellant with a statement of reasons for his discharge draw into play a full panoply of administrative review procedures. However, it is clear that "an agency must abide by its own regulations in effecting the removal of one of its employees". *Doe v. Hampton,* 184 U.S.App.D.C. 373, 566 F.2d 265, 280 (1977). *See Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3

---

8. For a listing of cases determining that a stigma did or did not exist, *see Mazaleski v. Treusdell,* 183 U.S.App.D.C. 182, 195–96, 562 F.2d

701, 714–15 (D.C.1977); *Schwartz v. Thompson,* 497 F.2d 430, 432 (2d Cir. 1974); *Adams v. Walker,* 492 F.2d 1003, 1008 (7th Cir. 1974).

L.Ed.2d 1012 (1959). Appellant alleges two types of pronouncements by HUD that have created binding regulations upon it. First, in a publication entitled "MEMO-RANDUM FOR: Principal Staff, Regional Administrators, Field Office Directors, Headquarters Office Directors" dated September 10, 1976, the Secretary of HUD set forth "decisions I [the Secretary] have reached with respect to the subjects covered by the Task Force report on HUD attorneys". This memorandum indicates a procedure to be followed in disciplinary matters. Paragraph "5. *Disciplinary actions involving attorneys*" provides as follows:

"Any disciplinary action proposed to be taken with respect to an attorney should first be brought to the attention of the General Counsel. He may be in a position in appropriate cases to consider placing the attorney in a different position. If the General Counsel does not agree after appropriate inquiry that the proposed action should be taken, he may elevate the matter to the Secretary's office."

Appellant alleges that this procedure was not followed because "the defendants have failed and refused to bring their action against PAIGE to the attention of the General Counsel as required." Complaint at 6.

Second, appellant alleges that HUD Handbook 335.1 entitled "Merit Staffing Policy" establishes a policy that HUD employs its attorneys on the basis of merit. Appellant alleges a breach of this policy because "[h]igh level regional officials intentionally falsified the record by directing the person in the Regional Counsel's office, who surveyed PAIGE's performance and prepared an evaluation thereof, to change a favorable evaluation to an unfavorable evaluation. . . ." Complaint at 4–5. If these allegations prove to be true, basing an employment decision on such information might violate any merit staffing policy of HUD.

It is not clear whether these policy pronouncements have ascended to the mandatory level of regulations, or are merely precatory. *See Doe v. Hampton, supra,* 184 U.S.App.D.C. at 388, 566 F.2d at 280–81. However, "[w]here . . . a government employee has no procedural due process rights apart from those which the agency has chosen to create by its own regulations, scrupulous compliance with those regulations is required to avoid any injustice". *Mazaleski, supra,* 183 U.S.App.D.C. at 200, 562 F.2d at 719. Fortunately, there is no need for the district court to review the exact nature of these pronouncements. Any hearing based on appellant's property interest will include the factual circumstances surrounding the discharge and the appropriateness of the procedures followed.

### IV.

In conclusion, we concur in the admonition of the District of Columbia Circuit:

" 'The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.' *Bishop v. Wood, supra,* 426 U.S. at 349, 96 S.Ct. at 2080. Nevertheless, those decisions must be reached consistent with any procedural safeguards created by the employer and the salutary proscriptions of our Constitution." *Mazaleski, supra,* 183 U.S.App. D.C. at 203, 562 F.2d at 722.

Proof of the existence of a property interest does not, of course, entitle appellant to reinstatement. However, such proof does require a hearing whereby appellant can challenge the sufficiency of the charges against him. *See Perry, supra,* 408 U.S. at 603, 92 S.Ct. 2694. After the extensive controversy which this case has aroused, we think that perhaps an administrative hearing might be a futile gesture at this point. We conclude, therefore, that appellant should be given a trial in the district court to determine whether appellees have violated his constitutional right in a property interest by discharging him without just cause. *Cf. Arnett v. Kennedy,* 416 U.S. 134, 156–59, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). We reverse the judgment dismissing appellant's complaint, and we remand for further consideration in conformity with this opinion.

JUDGMENT REVERSED AND REMANDED.