793 F.2d 181
 The CITY OF SOUTH SIOUX CITY; The City of Randolph; The
City of Madison; the City of Wakefield;
Municipal Corporation of the State of
Nebraska, Appellants,
v.
The WESTERN AREA POWER ADMINISTRATION OF the UNITED STATES
DEPARTMENT OF ENERGY; William H. Clagett, Administrator,
Western Area Power Administration, United States Department
of Energy; John Herrington, Secretary of Department of
Energy; and The United States of America, Appellees.
The CITY OF SOUTH SIOUX CITY; The City of Randolph; The
City of Madison; The City of Wakefield;
Municipal Corporation of the State of
Nebraska, Appellees,
v.
The WESTERN AREA POWER ADMINISTRATION OF the UNITED STATES
DEPARTMENT OF ENERGY; William H. Clagett, Administrator,
Western Area Power Administration, United States Department
of Energy; John Herrington, Secretary of Department of
Energy; and The United States of America, Appellants.
 Nos. 85-1757, 85-1895.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 10, 1986.
Decided June 5, 1986.
 
 Steven C. Seglin, Lincoln, Neb., for appellants.
 Drake Cutini, Dept. of Justice, Washington, D.C., for appellees.
 Before HEANEY, Circuit Judge, TIMBERS,* Senior Circuit Judges, and BOWMAN, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 The issue in this appeal is whether four Nebraska cities--South Sioux City, Randolph, Madison, and Wakefield--are entitled to an injunction ordering the Western Area Power Administration (WAPA) to grant them an allotment of low-cost federal hydroelectric power made available through an informal notice-and-comment power-marketing proceeding undertaken by WAPA during 1979 and 1980. (The "Post-1985 Marketing Program" or "Program.") The appellants were denied allocations under the Program on the ground that their applications were untimely. They then brought this action and the district court, finding that WAPA's notice of the informal proceedings was insufficient to alert appellants of the need for timely application for the newly available power, entered an order enjoining WAPA from denying appellants' applications on grounds of untimeliness. The court then set for future resolution the issue inter alia of whether WAPA has any basis, other than the untimeliness of appellants' applications, for denying them an allotment under the Program. Although the court technically did not remand the case to WAPA, the court's order, in light of the intra-agency nature of the eligibility determination, had the effect of a remand to the agency for a determination of appellants' eligibility. WAPA determined that even if appellants' applications were not untimely, they were still not entitled to a power allotment because they were already receiving low-cost federal hydropower from WAPA indirectly through the Nebraska Public Power District (NPPD). The Program's published eligibility requirements disqualified any entity which was already receiving the benefits of low-cost federal power either directly from WAPA or indirectly from WAPA through a "parent organization" such as NPPD. The district court held that this decision by WAPA was unreviewable because it constitutes "agency action * * * committed to agency discretion by law" within the meaning of 5 U.S.C. Sec. 701(a)(2). Appellants contest this finding on appeal and reassert their contention that they are entitled to "injunctive relief in the form of an order directing WAPA to contract with the cities for an allocation of the newly-available power." WAPA cross-appeals, contending that the district court erred in holding that the notice WAPA gave concerning eligibility for power under the Program was deficient.
 
 DISCUSSION
 
 2
 After a thorough review of the record, we agree with the district court's reasoning and its determination that the notice given by WAPA was inadequate. However, we reverse its decision that WAPA's power-allocation decision is unreviewable because we agree with appellants that we have jurisdiction to consider their claim that WAPA abused its discretion by failing to follow its own published and binding rules for eligibility under the Program. See United States v. Nixon, 418 U.S. 683, 694-96, 94 S.Ct. 3090, 3100-02, 11 L.Ed.2d 1039 (1974); Morton v. Ruiz, 415 U.S. 199, 233-35, 94 S.Ct. 1055, 1073-74, 39 L.Ed.2d 270 (1974); Oglala Sioux Tribe of Indians v. Andrus, 603 F.2d 707 (8th Cir.1979); Paige v. Harris, 584 F.2d 178, 184-85 (7th Cir.1978); Gulf States Mfrs., Inc. v. NLRB, 579 F.2d 1298, 1308-09 (5th Cir.1978); Mazaleski v. Treusdell, 562 F.2d 701, 717-19 (D.C.Cir.1977). However, we hold that WAPA did not abuse its discretion in denying appellants' applications for a power allotment because it is clear from the record that WAPA did apply the Program's eligibility rules and that appellants are simply ineligible.
 
 
 3
 In 1979-80, WAPA determined that it would be able to market a small amount of newly available low-cost hydropower.[1] At several public comment forums held in 1980, and through informal negotiations as part of its notice-and-comment proceeding, WAPA discussed different alternatives for marketing this newly available power. In June, 1980, WAPA established and published eligibility requirements under which only "new customers" would receive this newly available power.[2] In a brochure published and made available at several public comment forums in 1980 and referred to in federal register notices, WAPA stated the following definition of a "new customer:"
 
 
 4
 Definition of new customers.
 
 
 5
 (1) Meet criteria for preference entities as of January 1, 1979.
 
 
 6
 (2) Located within marketing area determined under option paper I.
 
 
 7
 (3) Do not receive firm federal hydropower at this time for any of several reasons.
 
 
 8
 (4) Are not members of a parent organization who has a firm power contract.
 
 
 9
 In its July 31, 1980 federal register notice, WAPA reiterated that the small amount of newly available power would be sold only to those entities "who do not now receive federal power." In its October 30, 1980 federal register notice, WAPA again stated that the newly available power would be sold only to entities "who meet the criteria for new customers set forth in the June, 1980 report." The notice stated that transcripts of the June, 1980 and August, 1980 public comment forums, and all other relevant materials were available from WAPA's Billings, Montana and Golden, Colorado offices. Mr. Edwin C. Speare, WAPA's assistant manager for marketing at the Billings office, states in his deposition that the definition of "new customer" was applied to exclude any entity which was already receiving federal power directly from WAPA, or indirectly from a parent organization such as NPPD:
 
 
 10
 [T]he intent was to try to give this tiny increment of power to people that had not had the advantages of federal hydro before. Had member cooperatives and people that buy from NPPD in Omaha on a wholesale basis applied for the thirty-five and forty megawatts, no one, absolutely no one, would have gotten any significant amount of power. It is too small an amount to be spread across such a large group of people at such a large load.
 
 
 11
 Under these eligibility requirements, it is clear that appellants are not qualified for an allotment of the newly available power. Appellants, along with a number of other Nebraska entities, were, in 1980 and are at the present time, receiving the benefits of low-cost federal power through parent organization NPPD. NPPD has a firm power contract with WAPA and passes on the benefits of this low-cost power to numerous Nebraska entities, including appellants, by selling them power at a significantly lower rate (the "blended rate.")
 
 
 12
 Appellants argue, however, that WAPA abused its discretion in denying their applications because it did not evaluate the applications received in 1979-80 under the published eligibility standards but instead applied a different de facto standard of eligibility under which they would have qualified if their applications had been accepted as timely. This de facto standard allegedly was whether the applicant was a "Class I" city which received federal hydropower from a parent organization in 1964, the date of WAPA's last marketing program. The district court found "that nothing in the record supports such an inference," but that the "relief requested, in any event, is injunctive, relating to prospective entitlement, not recompense for the past. Thus, what would have been is of no moment; of importance is what the plaintiffs' eligibility is now."[3]
 
 
 13
 However, even if we assume that appellants could obtain an injunction on the ground that their applications were not considered on the same basis as the timely applications, appellants would not be entitled to relief because the record fails to support their claim of discriminatory treatment. WAPA admits that in evaluating whether an entity was a member of a parent organization which had a firm power contract with WAPA, at least one WAPA official looked at the written contract under WAPA's 1964 program to determine whether the applicant was a Class I City which received federal hydropower from a parent organization under the existing 1964 plan. However, the record supports WAPA's contention that this was simply one method for applying the published eligibility standard rather than the standard of eligibility itself.[4] WAPA points out that ten entities, including five from Nebraska, were denied a new power allotment because WAPA determined that they were already receiving the benefits of WAPA power as a member of a parent organization which received firm federal hydropower from WAPA.
 
 
 14
 The use of the Class I City evaluation method by at least one WAPA official, however, resulted in an erroneous allocation to at least one[5] Nebraska City--Lyons--which was already receiving NPPD's "blended rate." Appellants seek to bootstrap themselves on to this error, arguing that if Lyons mistakenly received a power allotment, this Court should order WAPA to extend the benefits of this error to them. We decline to do so, because, despite the Lyons incident, there is no support in the record for appellants' theory that they were treated unfairly. First, it is far from clear that the erroneous evaluation method would have been applied to appellants, or even if it was, that appellants would have received a power allotment. Second, Lyons and the other four Nebraska entities no longer receive NPPD's "blended rate." When NPPD learned that these entities had received a direct allocation of federal power, their indirect allocations of federal power through the "blended rate" were cut off.
 
 
 15
 In sum, it is clear that appellants are not eligible for a new power allotment under the Post-1985 Marketing Program, and there is a lack of support in the record for their claim of discriminatory treatment. Accordingly, they are not entitled to the injunction they seek.
 
 
 16
 Affirmed.
 
 
 
 *
 The Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 WAPA currently has contracts for the sale of over 2,200 megawatts of power. The newly available power constitutes only thirty-five megawatts in summer and forty megawatts in winter
 
 
 [2]
 This decision was consistent with Section 5 of the Flood Control Act of 1944, 16 U.S.C. Sec. 825s, which provides that federal power should be marketed "in such manner as to encourage the most widespread use thereof at the lowest possible rates to consumers consistent with sound business principles."
 
 
 [3]
 The district court in an August 22, 1984 order noted that: "Both sides agree that the defendants can not be liable for money damages because of sovereign immunity."
 
 
 [4]
 Apparently, one WAPA official used this evaluation method because he had difficulty applying the parent organization standard to NPPD customers. WAPA did not intend to disqualify all NPPD customers but only those who were already receiving the benefits of WAPA power by receiving NPPD's "blended rate."
 
 
 [5]
 Four other Nebraska cities also received a new power allotment even though they were already receiving NPPD's "blended rate." However, it appears from a letter at R 124 that these four cities erroneously received an allotment because they had received an allocation of WAPA power in 1964 but declined contracts for various reasons. This error appears unrelated to appellants' situation