**Richard R. HUGHES, Sr., Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Appellee.**

No. 81–2212.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1984.

Decided March 26, 1984.

James J. Nolan, Jr., Baltimore, Md. (W. Michel Pierson, Baltimore, Md., on brief), for appellant.

Lynn D. Poole, U.S. Postal Service, Washington, D.C. (D. Richard Froelke, Asst. Gen. Counsel, Washington, D.C., on brief), for appellee.

Before WIDENER, HALL and PHILLIPS, Circuit Judges.

K.K. HALL, Circuit Judge:

Richard R. Hughes, Sr., appeals from the district court's decision limiting the relief

---

**5.** *Sine v. Mitchell Transport, Inc.,* 553 F.2d 97   (4th Cir.1977) (unpublished).

to which he was entitled to the restoration of his name to the United States Postal Service's hiring register for mail handlers. Finding no error, we affirm.

## I.

Hughes was first hired by the Postal Service as a temporary or "casual" employee [1] in November, 1975. He was employed as a clerk and was assigned various tasks, which included sweeping and filing mail, carrying trays of mail, handling mail sacks, and loading and unloading postal trucks.

On December 22, 1975, Hughes injured his left shoulder while at work. The following day, he was seen by Dr. Georgina Goodwin, the Postal Service's medical officer, who prescribed pain medication and heat treatments. Hughes was able to complete the remainder of his eighty-nine day term of employment, and after its expiration, he was rehired for another term.

On February 23, 1976, Hughes reinjured his left shoulder while unloading a mail sack from a truck. He again saw Dr. Goodwin and later visited a hospital where he was referred to Dr. Lawrence Blumberg, an orthopedic surgeon. Dr. Blumberg first saw Hughes on March 2, 1976, and initially diagnosed the injury to be torn muscles and ligaments. He subsequently determined the injury to be bursitis of the left shoulder and prescribed physical therapy and cortizone injections. On April 19, 1976, Dr. Blumberg released Hughes to return to work "without limitation." After a follow-up consultation on October 4, 1976, Dr. Blumberg determined that Hughes had suffered a fifteen percent permanent partial disability of the left upper extremity.

As a result of the injury to his arm on February 23, Hughes missed approximately two months of work. He returned to work and served out the remainder of his term, and eventually was rehired for a third eighty-nine day term as a clerk. In the meantime, Hughes filed a claim for compensation for his injury and was awarded compensation for a "15% permanent partial loss of use of left arm."

Hughes had previously submitted an application for a permanent position as a mail handler. Mail handlers load and unload mail sacks from trucks and transport, open, and dump the sacks onto various pieces of sorting equipment. The sacks weigh up to seventy pounds. Consequently, the Postal Service's qualification standards for the position of mail handler require that an applicant pass a strength and stamina test. [2]

The Postal Service's *Personnel Handbook* sets forth the method by which vacancies are filled. Registers of eligible employees are maintained in descending order of grades on written examinations with preferences given to veterans. All eligibles on the register are first required to respond to a notification that the Postal Service has openings for a particular position and plans to select one or more eligibles from the register for that position. They are then required to complete application forms. The returned notices are reviewed, and applicants are subsequently scheduled for a pre-appointment interview.

---

**1.** As a "casual" employee, Hughes did not hold a permanent position but was limited to tours of duty not exceeding 89 days.

**2.** The Postal Service's qualification standards for mail handlers provide that:

**Test of strength and stamina.**—When a post office has a job opening and the applicant's rating is high enough to be considered for appointment, the applicant will be called for a test of strength and stamina. The test will consist of lifting, shouldering, and carrying mail sacks weighting [*sic*] 70 pounds, pushing a handtruck, and loading and unloading mail sacks of various weights. When persons are within reach for appointment, they will be notified when and where to report for the test of strength and stamina. Persons with certain physical conditions will not be permitted to take the test of strength and stamina without the prior approval of a physician. These physical conditions are:
a. hernia or rupture
b. back trouble
c. heart trouble
d. pregnancy
e. any other condition which makes it dangerous to the applicant to lift and carry 70-pound weights.
Persons with these physical conditions will be given special instructions at the time that they are notified to report for the test.

In addition, the qualification standards for mail handler require that an applicant, whose rating is high enough to be considered for appointment, be called for a strength and stamina test. Selections are then made from the names on the register according to the "Rule of Three," pursuant to which each vacancy is filled from among the three highest-rated eligibles. Finally, any eligibles so selected must take and pass a medical examination before a final appointment may be made.

Hughes passed the written examination for mail handler. Based on his examination score and a veteran's allowance, Hughes' final rating was 95.7, and his name was placed on a register of eligibles. On February 6, 1978, Hughes was notified that his name had been reached on the register for appointment consideration, and he responded that he wished to be considered.

On February 16, 1978, Ellen Snyder of the Postal Service's personnel office contacted Dr. Goodwin. Snyder informed Dr. Goodwin of Hughes' fifteen percent permanent partial disability to the left arm and requested an opinion as to his medical suitability for employment as a mail handler. Based on the nature and extent of the disability and the duties which the position entailed, Dr. Goodwin expressed her opinion that the disability rendered Hughes medically unsuitable for employment as a mail handler.

Accordingly, Hughes' name was removed from the register, and he was notified that he had been found to be "not medically suited for Postal Employment." Hughes was determined to be medically unsuitable without ever being afforded the opportunity to take a test of his strength and stamina.

On March 18, 1980, Hughes instituted this action seeking, *inter alia*, a mandatory injunction requiring the Postal Service to restore his name to the register and damages for the wages lost as a result of the Postal Service's actions. The district court dismissed three of the four causes of action advanced by Hughes in his complaint. The only theory of liability that the district court permitted to be litigated was Hughes' claim that the Postal Service had misapplied its rules and regulations in processing his application.[3]

Following a bench trial, the district court determined that the Postal Service had failed to follow the language of its regulations when it did not afford Hughes the opportunity to take a strength test as required by the Postal Service's qualification standards. The district court, therefore, ordered that Hughes' name be restored to the register. The district court viewed as inappropriate any award of monetary relief to Hughes. The court concluded that "there is no proof whatsoever that Mr. Hughes would have been hired as a mail handler even had he taken and passed the strength test." Hughes appeals.

## II.

On appeal, Hughes contends that the district court denied adequate relief to him and that the denial was erroneous because it was based upon an illogical allocation of the burden of proof and violated fundamental remedial precepts.[4] We disagree.

Hughes argues that the district court erred by failing to place upon the Postal Service the burden of proving that he would not have been selected as a mail handler. Hughes concedes that this bur-

3. The other theories under which Hughes alleged that he was entitled to recover included: a private action for discrimination against the handicapped under 39 U.S.C. § 1003; a cause of action under the due-process clause of the Fifth Amendment; and a cause of action implied from 5 U.S.C. Ch. 75 for retaliation for filing a workman's compensation claim. The district court dismissed these causes of action, and Hughes does not contest that ruling on appeal.

4. Hughes' reliance on cases involving claims arising under the civil rights statutes, 42 U.S.C. §§ 1981, 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, is misplaced. This is not a discrimination case. The district court dismissed Hughes' causes of action for discrimination, and Hughes has not appealed from that ruling.

den would have been "impossible" to carry, but nonetheless he asserts that in the absence of evidence to the contrary, the district court should have awarded him monetary relief based upon the "supposition" that he would have been hired as a mail handler. We will not indulge in such speculation.

A plaintiff has the burden to prove his case. *Kohlsaat v. Parkersburg & Marietta Sand Co.*, 266 F. 283 (4th Cir.1920). Under the "Rule of Three," Hughes had no assurances that he would be the employee selected from the register. The placing of Hughes' name on the register was not the equivalent of appointing him to a permanent position of mail handler. He was merely an applicant for employment. Even as one of the top three, Hughes would have remained subject to the vagaries of the selection process. Thus, the district court's finding that Hughes failed to prove he would have been selected is not clearly erroneous. In holding that Hughes had been improperly denied an opportunity to take the strength and stamina test, it was appropriate for the district court to order that Hughes' name be restored to the register of eligibles for the position of mail handler. Nothing more was required.

Next, Hughes argues that the district court disregarded the fundamental remedial precept of making the injured party whole in refusing to award him monetary relief. We cannot agree. Any award of money would be based, of course, upon some theory that the Postal Service should have employed Hughes, but as we have already said, Hughes did not prove he would have been selected. The district court was correct in placing Hughes in the circumstances where he would have been without making any conjectures as to the outcome of the selection process. The mere fact that the Postal Service may have violated one of its regulations does not necessarily mean that the Postal Service is subject to the entire panoply of possible remedial action which a court might impose. *Cf. Page v. Bolger*, 645 F.2d 227, 232 n. 10 (4th Cir.), *cert. denied*, 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981) ("That

... the [postal] regulation ... would be entitled to enforcement by a federal court, does not in our view mean that, if violated, its violation must be redressed as if it constituted a direct violation of substantive provisions of Title VII.") Moreover, the Postal Service's violation of its regulation was neither willful nor meanspirited, but simply a good-faith misinterpretation. Under these circumstances, we cannot sanction the taking of money from the public fisc in the manner proposed by Hughes. Accordingly, we hold that the district court did not abuse its discretion in refusing to award monetary relief.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.