740 F.2d 526
 Darrel L. BARTHOLOMEW, Plaintiff-Appellant,
v.
UNITED STATES of America; Paul N. Carlin, Regional
Postmaster General, Central Region, United States Postal
Service; James M. Maloney, Postmaster, United States Postal
Service, Aurora, Illinois, Defendants-Appellees.
 No. 83-1968.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 8, 1984.
Decided July 18, 1984.
As Corrected July 26, 1984.
 
 1
 Phillip S. Wood, Cunningham & Wood, Aurora, Ill., for plaintiff-appellant.
 
 
 2
 Joan C. Goodrich, Atty., U.S. Postal Service, Washington, D.C., for defendants-appellees.
 
 
 3
 Before WOOD and POSNER, Circuit Judges, and REYNOLDS, Chief District Judge.*
 
 
 4
 REYNOLDS, Chief District Judge.
 
 
 5
 Darrel L. Bartholomew appeals from the district court's order granting summary judgment to the defendants in an action that he brought following his discharge from his probationary position as a letter carrier. The issues before the court are: (1) whether Bartholomew was still a probationary employee at the time of the discharge, and (2) whether Bartholomew's discharge was effected in violation of the Postal Service's regulations. The district court concluded that at the time Bartholomew was discharged, he was serving a probationary period that commenced upon reinstatement following a previous discharge. The district court also concluded that although the defendants did not adhere to the letter of the regulations at the time of Bartholomew's second discharge, the regulations had been substantially complied with. We affirm the district court's judgment.
 
 
 6
 Bartholomew was hired by the United States Postal Service to work as a letter carrier for the Aurora, Illinois, Post Office, effective November 1, 1980. Pursuant to the Postal Service's regulations, Bartholomew's appointment was subject to a ninety-day probationary period that would end on January 29, 1981. See Employee and Labor Relations Manual Section 377.1.
 
 
 7
 On November 21, 1980, Bartholomew's supervisor told him that he would be discharged for unsatisfactory performance. Bartholomew's attorney protested the discharge, and ultimately the Postmaster of Aurora agreed to rescind the termination and reinstate Bartholomew. The reinstatement was effective on January 10, 1981.
 
 
 8
 On February 9, 1981; March 16, 1981; and March 27, 1981, Bartholomew received adverse evaluations from his supervisor. The former two evaluations described Bartholomew's performance as not fully satisfactory, but recommended that he be retained. The latter evaluation found Bartholomew's performance unsatisfactory, and recommended separation. On March 27, 1981, Bartholomew's supervisor told him verbally that he would be terminated, effective April 3, 1981.
 
 
 9
 Prior to the effective date of the discharge, Bartholomew did not receive a written notice from the appointing official informing him of the termination, stating the reasons for the termination, or providing any information regarding grievance procedure or administrative review. On April 8, 1981, Bartholomew was sent a Postal Service Form 50, which served as the official notice of his discharge. The form was issued under the authorization of the Regional Postmaster, and stated the reasons for Bartholomew's discharge.
 
 
 10
 Bartholomew appealed the discharge to the Merit Systems Protection Board on April 14, 1981. In a decision dated June 17, 1981, the Board held that it lacked jurisdiction over the appeal. It found that Bartholomew was a preference eligible employee, but further that he had not completed the one year of continuous service necessary to enable him to appeal the discharge.
 
 
 11
 Bartholomew filed a complaint in the Northern District of Illinois on September 9, 1981. He alleged that the Postal Service had failed to comply with its regulations in discharging him on April 3, 1981; that he was unlawfully denied back pay for the period between his November 25, 1980, discharge and his reinstatement; that the defendants had acted arbitrarily and capriciously when they discharged him on April 3, 1981; and that he had been unlawfully discriminated against. The defendants moved for dismissal of the complaint for lack of subject matter jurisdiction or, in the alternative, for summary judgment.
 
 
 12
 On April 27, 1983, the district court granted the motion for summary judgment on all four counts. The district court first concluded that it had subject matter jurisdiction over the complaint. The court then found that despite Bartholomew's contentions to the contrary, he was still a probationary employee at the time he was dismissed on April 3, 1981. This conclusion was based on Postal Service's regulations providing that employees who are reinstated must serve new probationary periods, and that only periods of absence during which an employee remains on the payrolls are counted toward completion of the probationary period. The district court also held that by issuing the Postal Service Form 50, the defendants had substantially complied with the regulatory notice provisions:
 
 
 13
 Plaintiff had previously been advised of his effective termination date. The notification form thereafter advised plaintiff both of the reasons for termination and of the effective date of separation. Although plaintiff received the form after he was actually terminated, the employment decision was memorialized prior to the end of the probationary period and plaintiff received the written notification promptly after it was executed. There was no "back-dating," as condemned by section 365.327 [of the Employee and Labor Relations Manual], to avoid the restrictions on termination of nonprobationary employees. The mere fact that the form served a recordkeeping function for the government does not preclude its use to also provide the plaintiff with notice pursuant to the regulations. Concededly, the fact that plaintiff received the notice after his actual termination is not precise compliance with the regulations. Here, however, the termination decision was made and memorialized during the probationary period, and the plaintiff was advised of it first orally and then in writing, and that is enough.
 
 
 14
 The district court went on to conclude that as a Postal Service employee, Bartholomew was not entitled to back pay by virtue of 39 U.S.C. Sec. 410(a), that a determination of whether his discharge was arbitrary and capricious was beyond the scope of the court's jurisdiction, and that he had not exhausted his administrative remedies with respect to his claim of discrimination.
 
 
 15
 On this appeal, Bartholomew challenges the district court's conclusions that he was still a probationary employee on April 3, 1981, and that the defendants substantially complied with the Postal Service regulations governing the separation of probationary employees.
 
 
 16
 With respect to the former conclusion Bartholomew argues that the November 21, 1980, discharge was rescinded and should therefore be treated as a nullity for the purpose of determining the expiration of his probationary period. In his view, this first discharge was effected in violation of Postal Service regulations, and it was for this reason that he was permitted to return to his job. He relies on a letter from the Aurora Postmaster to the Merit Systems Protection Board's Chicago Field Office, stating that Bartholomew's termination "... should be rescinded and that Mr. Bartholomew be reinstated." (Emphasis added.) Because his termination was rescinded, Bartholomew urges that it should be treated as though it never occurred. Thus, there was no break in the probationary period beginning on November 1, 1980, and the period expired on January 29, 1981. When he was discharged on April 3, 1981, so the argument goes, he was improperly treated as a probationary employee, depriving him of the protections afforded nonprobationary employees under the collective bargaining agreement and the Postal Service regulations.
 
 
 17
 We find this argument unpersuasive. The applicable Postal Service regulations, Employee and Labor Relations Manual Sec. 377.1, provides in part:
 
 Length of Time Required
 
 18
 Some appointments are subject to completion of probationary period [sic]. Others may be subject to completion of a probationary period begun under a previous appointment. (Details on counting probationary service are in 377.2.) The following probationary or trial periods are required:
 
 
 19
 a. Career Appointment to Bargaining Unit Position. An eligible selected for career appointment from a Postal Service register serves a probationary period of 90 days. This applies not only to the first such appointment but to any subsequent career appointment by selection from a register or any other method of rehiring whether or not the appointee had previously completed a probationary period.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 e. Reinstatement. Former federal and postal employees who are reinstated must serve a new probationary period.
 
 
 23
 Additionally, the regulations provide that certain periods may be included in the calculation of an employee's probationary period, although the employee was not technically working in the position to which he was appointed during these periods. Employee and Labor Relations Manual Sec. 377.2. There is no provision for periods commencing with a separation and ending with a recision of the separation. In our view, these regulations bespeak the Postal Service's intent to impose upon all reinstated employees a requirement that they serve a new probationary period, whatever the reason for their separation.[1]
 
 
 24
 Bartholomew's argument assumes that whenever a probationary employee is reinstated upon reconsideration of his separation, he should automatically be relieved of the requirement of serving a new probationary period. There is no support for this assumption in the Postal Service regulations. Additionally, notwithstanding Bartholomew's implicit contention to the contrary, the mere fact that the Postmaster has decided to give a terminated employee a second chance does not compel the conclusion that the termination was unjustifiable and that a second probationary period should not be imposed. In summation, we find that the district court correctly concluded that Bartholomew began a new probationary period when he was reinstated, and that period had not expired at the time of his second discharge.
 
 
 25
 Bartholomew's second argument, that his second discharge was effected in violation of the Postal Service's notice regulations, is somewhat more troublesome because the appellees concede that they did not comply with the letter of those regulations. The defendants recognize that under the regulations, probationary employees are to receive written notice from an appointing official before the end of the probationary period, setting forth the reasons for the discharge. However, the appellees argue that substantial compliance with the regulations is all that is required, and that in this case, there was substantial compliance.
 
 
 26
 The relevant Postal Service regulations, which appear in the Employee and Labor Relations Manual, provide:
 
 
 27
 .326 Procedure in Separating. If an appointing official decides to terminate an employee who is serving a probationary period due to conditions arising prior to appointment, or because work performance or conduct during this period fails to demonstrate fitness or qualification for continued postal employment, the employee's services are terminated by notifying the employee in writing as to why he is being terminated and the effective date of the action. The information in the notice regarding the termination must, as a minimum, consist of the appointing official's conclusions as to the inadequacies of performance or conduct.
 
 
 28
 .327 Effective Date. The effective date of separation by disqualification must be before the end of the probationary period but may not be retroactively effective. The notice of separation must be given to the employee before the end of the probationary or trial period.
 
 
 29
 We read these provisions to direct, inter alia, that when a probationary employee is to be discharged due to inadequate performance, he or she (1) receive from the appointing official (2) prior to the end of the probationary period (3) a written notice of the discharge (4) setting forth the reasons for the discharge.
 
 
 30
 In the present case, Bartholomew did not receive any written notice of the discharge until some two weeks after the discharge became effective. This notice was a Postal Service Form 50, which is a form used for personnel recordkeeping purposes. The form stated that the termination was based on Bartholomew's inefficiency and lack of qualifications to become a letter carrier. It was issued under the authority of the Regional Postmaster General on April 8, 1981, five days after the date of the termination but one day before the end of the probationary period.[2] Plaintiff received the Form 50 several days later. The only other notice Bartholomew ever received was verbal notice from his supervisor on March 27, 1981, the day Bartholomew was shown the form bearing the supervisor's recommendation that he be discharged. Thus, while Bartholomew did receive written notice of the discharge from an authorized official, and while the notice was issued prior to expiration of the probationary period, Bartholomew did not have written notice at the time the discharge became effective, and did not receive the written notice before the end of the probationary period.
 
 
 31
 As a preliminary matter, we observe that probationary federal employees have only the weakest claims of entitlement to continued employment and may be discharged within the broad discretion of the employing agency. See Beeson v. Hudson, 630 F.2d 622, 626 (8th Cir.1980); Ring v. Schlesinger, 164 U.S.App.D.C. 19, 26, 502 F.2d 479, 486 (D.C.Cir.1974). The probationer's procedural rights at the time of discharge are accordingly circumscribed. For example, a probationary Postal Service employee has no right of access to the grievance procedures of a collective bargaining agreement. Van Leeuwen v. United States Postal Service, 628 F.2d 1093, 1096-97 (8th Cir.1980). He has no right to a pre-termination hearing, Jenkins v. United States Post Office, 475 F.2d 1256, 1257 (9th Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 57, 38 L.Ed.2d 86 (1973), nor does he have a right to appeal the discharge to the Merit Systems Protection Board. See Budnick v. Merit Systems Protection Board, 643 F.2d 278, 279 (5th Cir.1981).
 
 
 32
 Nonetheless, when an employing agency exercises its power to promulgate regulations that confer procedural rights on its employees, the agency is bound to those regulations. Thus, "[a]n executive agency must be rigorously held to the standards by which it professes its action to be judged.... Accordingly, if dismissal from employment is based on a defined procedure, even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed ...." Vitarelli v. Seaton, 359 U.S. 535 at 546-547, 79 S.Ct. 968 at 976, 3 L.Ed.2d 1012 at 1021 (1959) (Frankfurter, J., concurring in part and dissenting in part) (citation omitted). While the Postal Service is not an executive agency and is generally subject to a unique body of legislation governing personnel matters, see 39 U.S.C. Secs. 410, 1001-1209, like other establishments of the federal government, it is not at liberty to ignore its own regulations. See Connolly v. United States, 554 F.Supp. 1250, 1 Cl.Ct. 312 (1982), rev'd on other grounds, 716 F.2d 882, 883 (Fed.Cir.1983). Thus, if the Postal Service regulations conferred procedural rights on Bartholomew, and if Bartholomew's April 3, 1981, discharge was effected in a manner that deprived him of those rights, the Postal Service's action must be invalidated.
 
 
 33
 Turning now to Bartholomew's contention that he should have received written notice prior to the end of his probationary period, we find that the regulation in point confers no procedural right to receipt of written notice at a particular time. As we read the second sentence of Section .327 of the Employee and Labor Relations Manual, it establishes an internal operating procedure to be followed at the time of a probationer's discharge. The procedure operates to insure that there is no impermissible retroactive termination after the probationary period has passed by timely providing the probationer with documentary evidence of the adverse action. Certainly, where the probationer does not receive any notice of recommendations of adverse action from his supervisors, prompt receipt of written notice from a detached official may have the benefit of permitting the probationer to take necessary action before the effective date. Yet the primary purpose of this provision is to secure order and dispatch in the separation of probationers, and particularly to insure that there can be no dispute that the discharge occurred during the probationary period.
 
 
 34
 A useful analogy can be drawn between regulatory provisions such as the one at hand and directory legislation. Legislation of this latter variety includes statutes that, for guidance of governmental officials' discharge of duties, "propose 'to secure order, system and dispatch in proceedings' ...." Ralpho v. Bell, 186 U.S.App.D.C. 368, 388, 569 F.2d 607, 627 (D.C.Cir.1977), quoting French v. Edwards, 80 U.S. (13 Wall.) 506, 511, 20 L.Ed. 702, 703 (1871). That the legislature may have used the word "shall" or "must," rather than "may," in directing the discharge of a specified duty does not require that the statute be construed as mandatory rather than directory. A variety of factors should be considered in determining the effect to be given the statute, including whether a mandatory construction would yield harsh or absurd results. Ralpho, supra, 186 U.S.App.D.C. at 388-389, 569 F.2d at 627-628.
 
 
 35
 In our view, it would be absurd to set aside Bartholomew's discharge simply because he received his written notice outside of the probationary period. No one argues that Bartholomew had no notice that he faced discharge, and such an argument would be implausible. He had been separated once for inefficiency, and after reinstatement, his supervisor made a record that he still was having difficulties carrying out his duties. Bartholomew was twice told during his second probationary period that his work was below par but that he would be retained. On the third occasion, he was told that he would be separated. Given this course of events, we are at a loss to see how Bartholomew was prejudiced by the Postal Service's failure to insure that he received written notice of his discharge before the end of the probationary period. He had notice of the impending discharge as a matter of law. The purpose that Section .327 was promulgated to serve, that is, to safeguard against retroactive application of the procedures for separating probationers, was served here, because the Postal Service Form 50 was issued one day before the end of the probationary period. It would be anomolous to set aside Bartholomew's discharge simply because he did not receive the Form 50 in the time prescribed.[3]
 
 
 36
 Bartholomew also argues that the Postal Service Form 50 is insufficient as notice because it is a document in the nature of a housekeeping record prepared by personnel clerks, and because it does not state the reasons for discharge with adequate specificity. Yet no inconsistency inheres in treating as a formal notice to an employee of discharge a document that also serves to give the employer a complete record of personnel action. That the Form 50 may have been prepared by nonsupervisory personnel is irrelevant, because the form clearly states that it was issued under an authorized official's direction. Finally, while the reasons for the discharge as set forth in the form are somewhat sketchy, we do not think that Section .326 of the Employee and Labor Relations Manual confers a procedural right to an elaborate statement of the reasons for discharge. The requirement that the appointing official provide conclusions about the inadequacies of the probationer's conduct is ostensibly designed to serve a recordkeeping purpose for the probationer and the employer. We decline to hold that where a probationer is not fully informed in writing of the reasons for his discharge, the discharge must be set aside, even though the decision to discharge is virtually unreviewable.
 
 
 37
 In sum, we agree with the district court's conclusion that in the circumstances of this case, the procedures used in discharging Bartholomew were adequate. We emphasize, however, that the provisions of the Employee and Labor Relations Manual referring to the separation of probationers do not necessarily confer procedural rights upon the probationers and concomitant duties on the Postal Service. This is not to say that probationary employees have no right to procedural due process whatever, for there may be egregious circumstances in which a probationer's discharge is effected in so unfair a fashion as to warrant some form of relief. In this case, however, we hold that the procedures used in the second discharge were adequate, and that technical violations of the Postal Service's internal regulations do not provide a basis for reinstatement. The judgment of the district court is therefore AFFIRMED.
 
 
 
 *
 The Honorable John W. Reynolds, Chief District Judge for the Eastern District of Wisconsin, sitting by designation
 
 
 [1]
 We note that a regulation promulgated for other federal agencies treats probationers as having rendered service during breaks in their employment where the interruption is a consequence of unjustified or unwarranted personnel action. F.P.M. Supplement 990-2, Subch. 8. This regulation does not apply to the Postal Service, which has the power to promulgate regulations inconsistent with those applicable to other federal agencies. See 39 U.S.C. Secs. 410(a), 1005
 
 
 [2]
 The appointing official at the time Bartholomew was first appointed, and at the time he was reinstated, was Regional Postmaster General John P. Doran. The appointing official at the time of Bartholomew's second discharge was Regional Postmaster General Paul Carlin. Bartholomew does not argue that Mr. Carlin's authorization is insufficient for the purposes of the Postal Service notice regulations
 
 
 [3]
 In this context, the following language from the district court's decision and order is particularly apt:
 ... the whole purpose of probationary employment periods--to permit for a brief period unrestricted personnel decisions without review procedures, so as to promote efficiency and finality, even though it will increase the risk of arbitrary action--comes to naught when a probationary decision, itself administratively unreviewable, becomes the subject of extensive litigation with long and carefully researched briefs, as here.
 Bartholomew v. United States, No. 81-C-5096, at 18 n. 8 (N.D.Ill. April 27, 1983).
 It should be noted that there is some dispute over whether the personnel regulations of federal agencies and establishments, as set forth in their manuals and in-house publications, can ever confer procedural rights that the agencies are bound to respect. In Paige v. Harris, 584 F.2d 178 (7th Cir.1978), we indicated that certain internal rules of the Department of Housing and Urban Development ("HUD") establishing personnel policies and procedures might be binding on HUD. The plaintiff in that case had been terminated from his position as Area Counsel for HUD's Chicago Area Office, a position he had held for seven years. His complaint alleged in part that HUD had failed to follow its own rules in effecting the discharge. Specifically, the plaintiff relied on a disciplinary procedure appearing in a publication entitled "MEMORANDUM FOR: Principal Staff, Regional Administrators, Field Office Directors, Headquarters Office Directors," which provided that proposed disciplinary actions against HUD attorneys should be brought to the General Counsel's attention. The plaintiff argued that his termination had not been referred to the General Counsel's office, as the memorandum required. The plaintiff also relied on a provision of the HUD Handbook entitled "Merit Staffing Policy," which established that HUD attorneys were to be employed on the basis of merit. The plaintiff argued that this policy was violated when regional HUD officials intentionally falsified his employment record. In response to these contentions, the court observed that it was unclear whether these pronouncements were mandatory regulations or mere precatory directives. However, " '[w]here ... a government employee has no procedural due process rights apart from those which the agency has chosen to create by its own regulations, scrupulous compliance with those regulations is required to avoid any injustice.' " 584 F.2d at 185, quoting Mazaleski v. Treusdell, 183 U.S.App.D.C. 182, 200, 562 F.2d 701, 719 (D.C.Cir.1977). This language was not part of the holding in Paige, because the court concluded that the plaintiff enjoyed a property interest in continuing employment with HUD, and the district court's order dismissing the plaintiff's complaint was reversed on this basis. However, this dicta in Paige suggests that, in proper circumstances, a federal agency can be bound by its own regulations even though such regulations merely establish internal operating procedures.
 Not all courts have had the same regard for the in-house publications of federal agencies. In Fiorentino v. United States, 607 F.2d 963, 968, 221 Ct.Cl. 545 (1979), cert. denied, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980), the Court of Claims refused to follow the holding in Paige and observed:
 It is unfortunately all too common for government manuals, handbooks, and in-house publications to contain statements that were not meant or are not wholly reliable. If they go counter to governing statutes and regulations of the highest or higher dignity, e.g. regulations published in the Federal Register, they do not bind the government, and persons relying on them do so at their peril. Caterpillar Tractor Co. v. United States, 589 F.2d 1040, 1043, 218 Ct.Cl. 517 (1978) (A Handbook for Exporters, a Treasury publication). Dunphy v. United States [529 F.2d 532, 208 Ct.Cl. 986 (1975) ], supra (Navy publication entitled All Hands ). In such cases it is necessary to examine any informal publication to see if it was really written to fasten legal consequences on the government. Dunphy, supra. See also Donovan v. United States, 433 F.2d 522 (D.C.Cir.), cert. denied, 401 U.S. 944, 91 S.Ct. 955, 28 L.Ed.2d 225 (1971). (Employees Performance Improvement Handbook, an FAA publication) (merely advisory and directory publications do not have mandatory consequences).
 The court went on to hold that the provision of the HUD Manual relied upon was "blundering and unauthorized." Id.
 In the present case, we have no occasion to disparage the Postal Service's Employee and Labor Relations Manual. We hold only that the specific provisions relied upon do not ascend to the level of binding regulations, and no procedural rights are thereby conferred upon the probationary employees.