**Charlett Marie HARPER, Plaintiff,**

v.

**Anthony M. FRANK, Postmaster General, United States Postal Service, Defendant.**

**No. 90–CV–70322.**

United States District Court, E.D. Michigan, S.D.

July 3; 1991.

---

John R. Runyan, Jr., Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C., Detroit, Mich., for plaintiff.

Jennifer Gorland, Asst. U.S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION
## AND ORDER

FEIKENS, District Judge.

Plaintiff alleges that defendant denied her promotion to Manager, Engineering

and Technical Unit, at the United States Postal Service General Mail Facility in Detroit, because of her race and sex in violation of § 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16. A bench trial having been held, I find that defendant did not discriminate against plaintiff because of her race or sex. However, I find that defendant did fail to substantially comply with applicable Postal Service regulations during the promotion process.

## I. BACKGROUND

Plaintiff, a black female, was employed by the United States Postal Service for twenty-seven years. She retired March 1, 1987. In 1986, plaintiff applied for promotion to Manager, Engineering and Technical Unit, EAS–23, ("Manager ETU"). Her application was rejected. She was not interviewed for the position because she lacks an Industrial Engineering degree. The qualification standards for Manager ETU include a set of alternate requirements allowing persons without an Industrial Engineering degree to qualify for the position. The Promotion Review Board ("Board") did not consider whether plaintiff met any of the alternate requirements of the qualification standards before rejecting her application.

William S. Heilman, the white male eventually hired to fill the position, also lacks a degree in Industrial Engineering. Heilman's degree is in Industrial Management. He was found to be qualified, however, based implicitly on alternate requirement (g)[1]. Plaintiff argues that this disparate treatment creates an inference of discrimination.

After filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), plaintiff filed suit alleging that defendant violated Title VII by not promoting her to Manager ETU because of her race and sex.

Defendant argues that plaintiff was not promoted because she was not qualified for the position of Manager ETU under either the basic or alternate requirements. In addition, defendant asserts that Heilman was more qualified than plaintiff and that his qualifications were a legitimate non-discriminatory reason for selecting him.

Having heard the proofs, I asked both sides to address whether plaintiff might have a cause of action, separate and apart from her discrimination claim, based on defendant's alleged failure to follow its own regulations during the promotion process. Given their responses, that allegation now presents an alternative theory of liability in this case.

## II. ANALYSIS AND FINDINGS

### A. *The Evidence Presented at Trial*

I note at the outset that plaintiff never presented any evidence that she was discriminated against because of her sex. Plaintiff's proof at trial focused exclusively on the race issue. As such, I find that defendant did not discriminate against plaintiff based on her sex.

To substantiate her claim of race discrimination, plaintiff presented the testimony of six witnesses, in addition to herself. Their testimony sought to establish that the promotion process was not conducted in accordance with applicable Postal Service regulations, that the alternate requirements were applied only to William Heilman and not to plaintiff, and that plaintiff was qualified for the position of Manager ETU. In addition, plaintiff offered documentary evidence to establish her qualifications and those of William Heilman, as well as to illuminate the irregularities in the promotion process.

Plaintiff's principal claim at trial is that she was qualified for the position by virtue of alternate requirement (h)[2] and that the

---

1. Alternate requirement (g) provides in relevant part: "Persons who are incumbents in industrial engineering positions and who have successfully completed a curriculum at the bachelor's degree level in ... industrial management ... business administration ..., and with 2 years' experience in industrial engineering, will be considered as having completed the basic requirements."

2. Plaintiff originally claimed to be qualified under both alternate requirements (g) and (h). However, in my opinion of January 31, 1990,

Board's failure to consider whether she met the alternate requirements while finding Heilman qualified under them constitutes disparate treatment. Coupled with other violations of Postal Service regulations in the promotion process, plaintiff argues that this disparate treatment gives rise to an inference of discrimination.

The Board was chaired by Esther Richards, a black female. She was joined by Otis McAliley, a black male, and Phillip Roberto, a white male and industrial engineer who served as the Board's technical expert. The selecting official for the position was Donald Ashton, a white male. Eight postal employees applied for Manager ETU. Four of these applicants were white males, all of whom were rejected. The only postal applicant who was interviewed was Leonard Tomlinson, Jr., a black male who did not hold an industrial engineering degree but was considered to be the incumbent.

B. *Findings Of Fact*

Based on the testimony and exhibits presented at trial, I make the following findings of fact:

1. Plaintiff earned an Associate of Arts degree in Liberal Arts from Wayne County Community College in 1971, and a Bachelor of Science in Business Administration and a Juris Doctor from Wayne State University, in 1976 and 1983 respectively.

2. Plaintiff was employed by the United States Postal Service from October 1956 to January 1957, and from October 1959 to March 1987. From 1956 to 1971, plaintiff worked primarily as a distribution clerk. From 1971 to 1973, plaintiff was a Postal Management Trainee. The two-year management trainee program exposed plaintiff to all functional areas of mail operations and required her to specialize in one area during the last six months. Plaintiff specialized in Methods and Standards.

3. After completing the management trainee program, plaintiff was permanently assigned to the position of Methods and Standards Analyst. Her title later changed to Postal Operations Specialist, Sr. She held that position until 1987. Plaintiff was twice detailed[3] to Industrial Engineer EAS–21. She spent a total of approximately two years in that position.[4] Plaintiff was also detailed to Equal Employment Opportunity Investigator, Officer–In–Charge of the Wyandotte and Grosse Ile Post Offices, Tour Administrator, Employee and Labor Relations Assistant, Director of Employee and Labor Relations, and Employee and Labor Relations Officer during her career with the Postal Service.

4. The Manager ETU position was first posted internally with a six-grade restriction in June 1986. On October 6, 1986, the position was opened to all postal employees without any grade restriction. Simultaneously, outside applicants were recruited via newspaper advertisements. Applicants were required to have a degree in Industrial Engineering or to meet one of the alternate requirements set forth in qualification standard 08996a.

5. Plaintiff applied for promotion to Manager ETU in June 1986. At that time she was detailed on an ad hoc basis to the position of Equal Employment Opportunity Investigator. That detail concluded August 26, 1986. Plaintiff's application was rejected September 23, 1986, because she

granting defendant's motion for summary judgment in part, I held that plaintiff was not an "incumbent in an industrial engineering position" at the time of her application as required under alternate requirement (g). The issue whether plaintiff meets alternate requirement (h) remains. Alternate requirement (h) provides in relevant part: "Postal employees with 3 years of postal experience in functions other than industrial engineering and having completed a curriculum at the bachelor's degree level in ... business administration, ... and having successfully completed a 2–year specialized Postal Service program, will be considered as having

completed the basic requirements. The specialized program will include university and Postal Service courses which will compensate for deficiencies of industrial engineering subjects in the applicant's basic degree."

**3.** A detail is a temporary assignment outside of a Postal employee's permanent position.

**4.** Plaintiff's first detail to Industrial Engineer, EAS–21, was from August 1977 to May 1978, and her second from June 1982 to October 1983.

lacked an Industrial Engineering degree. She was notified of this decision by letter from the Promotion Review Board dated December 31, 1986.

6. William S. Heilman, a white male, submitted his resume to the Postal Service in response to a newspaper advertisement. He received a Bachelor of Science in Industrial Management from Purdue University in 1968. He worked for Owens–Illinois from 1970 to 1978, and for Parke–Davis from 1978 to 1987, in industrial engineering positions. His prior responsibilities included supervising industrial engineers.

7. Mr. Roberto assured Ms. Richards and Mr. McAliley that Heilman's industrial management degree was the equivalent of an industrial engineering degree. They found him to be qualified on that basis. Postal officials later determined that Heilman qualified for the position under alternate requirement (g).[5]

8. The Board recommended Heilman as the lone candidate for the position to Donald Ashton on December 11, 1986. Ashton interviewed Heilman and selected him for the position. Heilman was notified of his selection by letter dated February 27, 1987. He began work as Manager ETU on March 14, 1987.

9. The Board did not consider whether plaintiff met any of the alternate requirements, as required by qualification standard 08996a, prior to rejecting her application. Therefore, the Board never properly determined whether plaintiff was qualified to serve as Manager ETU.

10. Postal regulation 544.543[6] requires a Promotion Review Board to recommend at least three but not more than five candidates who "best meet" the qualification standards to the selecting official. The Board recommended only William Heilman to Ashton. However, the Board made no effort to comply with the special procedures for recommending less than three candidates to Mr. Ashton, as required by regulation 544.544.

11. Postal Service officials sought a waiver of the basic qualification standards for Heilman in violation of Postal Service regulations, which require waivers to be sought for positions, not for specific individuals.

12. Heilman was selected for the position of Manager ETU because Mr. Ashton and the Board believed him to possess more technical knowledge and to be more competent to manage an industrial engineering department than any other candidate.

## C. Conclusions Of Law

Given the applicable legal principles and the findings of fact set forth above, I reach the following conclusions of law:

1. Plaintiff is a member of a protected class, she applied for promotion, her application was rejected, and thereafter defendant continued to seek applicants for the position.

2. Plaintiff's testimony, as well as that of Leonard Tomlinson, Jr., Eugene Mixon and Thomas Pride, all of whom worked with plaintiff and were familiar with her skills and the demands of the position for which she was applying, indicates that plaintiff may have done a significant amount of industrial engineering work. Testimony also indicates that plaintiff may have met alternate requirement (h)[7] by virtue of her participation in the two-year management trainee program. Thus, there is evidence from which to conclude that plaintiff was qualified for the position. However, such a determination is very difficult, given the Board's failure to determine whether plaintiff was qualified under the alternate requirements and the lack of a definitive official interpretation of the alternate requirements at the time of plaintiff's application.

---

5. See footnote 1 for the relevant text of alternate requirement (g).

6. See, United States Postal Service Handbook P–11, Personnel Operations, Selection Policies for Non–Bargaining Unit Positions, Postal Bulletin, PB 21569 (June 5, 1986) for text of Postal Service Regulations referred to herein.

7. See footnote 2 for the relevant text of alternate requirement (h).

3. Even if plaintiff was qualified to be Manager ETU, thereby establishing a prima facie case of discrimination, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), defendant presented legitimate non-discriminatory reasons for selecting William Heilman for the position of Manager ETU with substantial evidence, as required by *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff was unable to demonstrate that defendant's proffered reasons for selecting Heilman were pretextual.

4. Plaintiff also failed to establish that other similarly situated employees not in her protected class were treated differently than she under circumstances giving rise to an inference of discrimination. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Shah v. General Electric Co.,* 816 F.2d 264 (6th Cir.1987). Therefore, I find that plaintiff was not denied promotion because of either her race or her sex.

5. Whether defendant substantially complied with applicable Postal Service regulations was tried with implicit consent of the parties.[8] It is thus part of plaintiff's complaint and is properly before this court. Federal Rule of Civil Procedure 15(b).[9]

6. In addition to complying with all applicable federal statutes, defendant is required to comply with its own regulations. *See Bartholomew v. United States,* 740 F.2d 526 (7th Cir.1984)[10]. Even absent evidence of bad motive, defendant committed a legally cognizable wrong if it failed to substantially comply with its own regulations governing the promotion process. *Hughes v. United States Postal Service,* 730 F.2d 967 (4th Cir.1984).

7. Plaintiff is entitled to judicial review of defendant's promotion decision where, as here, she alleges that defendant clearly disregarded specific postal rules or regulations. *Booher v. United States Postal Service,* 843 F.2d 943, 946 (6th Cir. 1988).[11]

8. The Postal Service failed to substantially comply with its own regulations during the Manager ETU selection process. The Postal Service promulgated regulations intending its employees to rely on the procedures established therein. This is evi-

8. Both parties presented witness testimony addressing compliance with Postal regulations and submitted briefs discussing the availability of a cause of action for failure to comply with those regulations without objection.

9. Federal Rule of Civil Procedure 15(b) provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon the motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues."

10. As the court pointed out in *Bartholomew:*
    Nonetheless, when an employing agency exercises its power to promulgate regulations that confer procedural rights on its employees, the agency is bound to those regulations. Thus, "[a]n executive agency must be rigorously held to the standards by which it professes its action to be judged ..." ... While the Postal Service is not an executive agency and is generally subject to a unique body of legislation governing personnel matters, like other establishments of the federal government it is not at liberty to ignore its own regulations. 740 F.2d at 530–31 (citations omitted).

11. Under the Postal Reorganization Act, judicial review of the merits of Postal Service personnel actions is limited to 1) any review provided for by federal statute; and 2) review of adverse employment actions provided for in Chapter 75 of the Civil Service Reform Act ("CSRA"), 5 U.S.C.A. § 7501 *et seq.* The denial of a promotion is not an adverse action as defined by CSRA. Thus, plaintiff cannot get judicial review of the merits of the Postal Service's selection of William Heilman as Manager ETU except in the context of her Title VII claim. *See, e.g., Blaze v. Payne,* 819 F.2d 128 (5th Cir.1987); *Gaj v. United States Postal Service,* 800 F.2d 64 (3d Cir.1986). However, I can review the promotion process to determine whether defendant substantially complied with its own regulations or acted arbitrarily or capriciously in denying plaintiff promotion to Manager ETU. *See McTiernan v. Gronouski,* 337 F.2d 31 (2d Cir. 1964); *Lee v. Bolger,* 454 F.Supp. 226, 232 (S.D. N.Y.1978); *Lutz v. United States Postal Service,* 538 F.Supp. 1129, 1134 (E.D.N.Y.1982), in addition to *Booher, Bartholomew,* and *Hughes* cited above.

denced by regulation 542.2, which provides that every possible attempt will be made to select the available employees who best meet the requirements of the open position whenever possible. Here, the Board clearly failed to avail plaintiff of the benefit of the relevant procedures.

### III. REMEDY

Given these findings of fact and conclusions of law, it is clear that plaintiff is entitled to relief. The United States Court of Appeals for the Seventh Circuit has held that the proper remedy for the Postal Service's violation of its own regulations is to invalidate the violative action and return plaintiff to his or her position prior to the time the action was taken. *Bartholomew, supra. Accord* United States Court of Appeals for the Fourth Circuit, *Hughes, supra.* In the context of this case, however, that offers plaintiff no relief because (1) she has retired from Postal Service; and (2) there is an innocent third party, currently serving as Manager ETU, who would be unjustly harmed should the promotion process be invalidated. Other courts addressing this issue have generally found substantial compliance with agency regulations and, therefore, have not addressed the remedy for failure to do so.

Because the nature of the remedy available to plaintiff, if any, is unclear, I request the parties to convene in my chambers to discuss this. The burden shall be on defendant to advise the court what remedy, if any, is available to plaintiff through the Postal Service.

IT IS SO ORDERED.