FRIENDS OF THE AQUIFER,
INC., Plaintiff,

v.

Norman Y. MINETA, Secretary of the United States Department of Transportation and United States Office of Pipeline Safety, Defendants.

No. 4:99CV320–WS.

United States District Court,
N.D. Florida,
Tallahassee Division.

May 1, 2001.

**1298**

John Kent Folsom, John K Folsom, Tallahassee, FL, for plaintiff.

E Bryan Wilson, U.S. Attorney, Tallahassee, FL, for defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

STAFFORD, Senior District Judge.

Plaintiff in this action seeks a writ of mandamus directing Defendants to discharge their duty to prescribe certain standards required under the federal pipeline safety laws codified at 49 U.S.C. §§ 60101–60128 (the "Pipeline Safety Act"). Before the court at this time is a motion (doc. 18) to dismiss filed by the Secretary of the United States Department of Transportation (the "Secretary"). Plaintiff has responded (doc. 24) in opposition to the Secretary's motion.

Plaintiff brings this action "pursuant to the Federal Hazardous Liquid Pipeline Safety Act, the Federal Administrative Procedure Act, . . . and the Federal Mandamus Act." Pl.'s Am.Compl. at ¶ 4. Because it is unclear whether any one of these three statutes provides this court with the authority to grant the relief Plaintiff requests, the court declines to grant Plaintiff the extraordinary remedy of mandamus relief.

### I.

Plaintiff alleges that the Secretary[1] failed to discharge his statutory duty under sections 60109(a), 60102(f)(2) and 60102(j) of the Pipeline Safety Act. In essence, these sections require the Secretary to prescribe by a date certain standards that (1) establish criteria for identifying hazardous liquid pipeline facilities and gathering lines; (2) require the periodic inspection of each pipeline so identified; and (3) describe the circumstances under which an operator of a hazardous liquid pipeline facility must use an emergency flow restricting device. Plaintiff maintains that the Secretary has not prescribed the requisite standards despite the deadlines—now long since passed—imposed by Congress.

Specifically, section 60109(a) provides that, "[n]ot later than October 24, 1994, the Secretary of Transportation shall prescribe standards that . . . establish criteria for identifying . . . by operators of hazardous liquid pipeline facilities and gathering lines—"

---

1. The current Secretary is Norman Y. Mineta, who shall be substituted for the former Secretary, Rodney E. Slater.

(i) each hazardous liquid pipeline facility, whether otherwise subject to this chapter, that crosses waters where a substantial likelihood of commercial navigation exists or that is located in an area described in the criteria as a high-density population area; and

(ii) each hazardous liquid pipeline facility and gathering line, whether otherwise subject to this chapter, located in an area that the Secretary, in consultation with the Administrator of the Environmental Protection Agency, describes as unusually sensitive to environmental damage if there is a hazardous liquid pipeline accident.

Section 60102(f)(2) provides as follows:

Not later than October 24, 1995, the Secretary shall prescribe, if necessary, additional standards requiring the periodic inspection of each pipeline the operator of the pipeline identifies under section 60109 of this title. The standards shall include any circumstances under which an inspection shall be conducted with an instrumented internal inspection device and, if the device is not required, use of an inspection method that is at least as effective as using the device in providing for the safety of the pipeline.

Section 60102(j) provides:

(1) Not later than October 24, 1994, the Secretary shall survey and assess the effectiveness of emergency flow restricting devices (including remotely controlled valves and check valves) and other procedures, systems, and equipment used to detect and locate hazardous liquid pipeline ruptures and minimize product releases from hazardous liquid pipeline facilities.

(2) Not later than 2 years after the survey and assessment are completed, the Secretary shall prescribe standards on the circumstances under which an operator of a hazardous liquid pipeline facility must use an emergency flow restricting device or other procedure, system, or equipment described in paragraph (1) . . .

## II.

Noticeably absent from the Pipeline Safety Act is any mention of a penalty or sanction for the Secretary's failure to prescribe the requisite standards by the specified dates. Also absent is a jurisdictional provision like the one Congress included in the Clean Air Act. See 42 U.S.C. § 7604(a) (providing that "[t]he district courts of the United States shall have jurisdiction to compel agency action unreasonably delayed"). See also 42 U.S.C. § 4852(a)(5) (the Residential Lead–Based Paint Hazard Reduction Act) (providing that "[a] suit may be brought against the Secretary of Housing and Urban Development and the Administrator of the Environmental Protection Agency . . . to compel promulgation of the regulations required under this section and the Federal district court shall have jurisdiction to order such promulgation").[2] That Congress could have included, but evidently chose not to include, a similar jurisdictional provision in the Pipeline Safety Act suggests to this court that the Pipeline Safety Act does not itself confer jurisdiction upon the district courts to adjudi-

---

**2.** In considering a recent bill to amend the Pipeline Safety Act, the Senate Committee proposed adding to the Pipeline Safety Act a section entitled "Protection of employees providing pipeline safety information," which included a subsection providing: "Any nondiscretionary duty imposed by this section shall be enforceable in a mandamus proceeding brought under section 1361 of Title 28, United States Code." Pipeline Safety Improvement Act of 2000, S.2438, 106th Cong. (2d Sess. 2000), S.Rep. No. 387 2000 WL 1234655 (Leg.Hist.). The Senate's proposal, however, was not enacted.

cate actions—like this one—wherein an aggrieved party seeks to compel the Secretary to prescribe certain standards required under the Act.

To be sure, Congress authorized civil actions under the Pipeline Safety Act in "an appropriate district court" by private "persons" to enjoin violations of the pipeline safety laws and any regulations prescribed thereunder. 49 U.S.C. § 60121(a).[3] While it authorized actions for injunctive relief, however, Congress did not authorize any other kind of action by private persons—not actions for declaratory judgment, not actions for damages, and not actions to compel compliance with statutory deadlines.

## II.

■ That the Pipeline Safety Act does not itself confer subject matter jurisdiction upon this court in this case does not end the inquiry. Plaintiff contends that the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and the Mandamus and Venue Act, 28 U.S.C. § 1361, provide an appropriate statutory basis for its case—a case in which it seeks nothing more than to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Assuming that Plaintiff is correct, the court nonetheless declines to award Plaintiff the mandamus relief it requests.

Plaintiff does not allege who its members are, whether any of those members live in close proximity to a hazardous liquid pipeline, how those members have been or will be adversely affected by the Secretary's failure to prescribe the particular standards at issue, or how a favorable decision would redress any actual or threatened injuries suffered by its members. Absent such allegations, this court cannot say that Plaintiff has established

standing to obtain the relief it requests from this court.

■ Furthermore, mandamus is an extraordinary remedy available only where a petitioner has a clear right to demand the performance of a ministerial or mandatory duty. *See* 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3655 at 406 (1998) (explaining that "the scope of the Mandamus and Venue Act has been limited by the federal courts to actions to compel the performance by a government office or employee of ministerial duties that are mandated by law"); *see also Northern States Power Co. v. United States Dep't of Energy*, 128 F.3d 754, 758 (D.C.Cir.1997) (explaining that the party seeking mandamus has the burden of showing that its right to the issuance of a writ is clear and indisputable), *cert. denied*, 525 U.S. 1016, 119 S.Ct. 540, 142 L.Ed.2d 449 (1998). If a petitioner seeks to compel the performance of a discretionary or directory duty, mandamus will not lie.

■ In this case, it is anything but clear that Congress intended the deadlines at issue to be mandatory rather than directory. While the statute, in fact, provides that the Secretary "shall" prescribe certain regulations not later than given deadlines, use of the word "shall" does not necessarily signify that Congress intended the deadlines to be mandatory. Indeed, in a variety of contexts, courts have concluded that Congress's use of the word "shall" in directing the discharge of a specified duty does not require that the statute be construed as mandatory rather than directory. *See, e.g., Conoco, Inc. v. Skinner*, 970 F.2d 1206 (3d Cir.1992) (explaining that whether the term "shall" is construed as directory or mandatory is dependent on an examina-

---

**3.** Interestingly, Congress specifically excluded "societies" from the definition of "person" for purposes of the pipeline safety laws. 49 U.S.C. § 60101(a)(17).

tion of Congressional intent); *Bartholomew v. United States,* 740 F.2d 526 (7th Cir.1984). For example, courts considering the separate problem of whether, as a consequence of missing a relevant statutory deadline, an agency loses jurisdiction over a case or issue, courts have universally decided that, absent a clear indication that Congress intended otherwise, a statutory deadline should be deemed to be directory, not mandatory. *See Bhd. of Ry. Carmen Div. v. Pena,* 64 F.3d 702, 704 (D.C.Cir.1995); *Canadian Fur Trappers Corp. v. United States,* 12 Ct. Int'l Trade 612, 691 F.Supp. 364, 367 (1988) (stating that a statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provisions), *aff'd,* 884 F.2d 563 (Fed.Cir. 1989); *United States v. James Daniel Good Real Property,* 510 U.S. 43, 63, 114 S.Ct. 492, 506, 126 L.Ed.2d 490 (1993) (noting that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction").

Here, nothing in the Pipeline Safety Act or in its legislative history suggests (1) that compliance with the deadlines was or is essential to the effective operation of the statute, (2) that Congress intended the deadlines to be anything other than directory, or (3) that Congress has been concerned with the Secretary's failure to act within the specified deadlines. Indeed, the legislative history reveals that, since the statute was enacted in 1968, Congress has time and again considered the legislation, tinkering with it, discussing it, sometimes enacting amendments, at other times rejecting proposed amendments. Not once during that time does it appear that Congress considered changing the deadlines or adding a sanction for noncompliance with those deadlines.

Furthermore, the issue here is not whether the Secretary's sluggishness has violated a statutory mandate. Clearly, it has. Instead, the issue is whether this court should exercise its equitable powers to order the Secretary to issue standards that are dependent upon technological complexities and developments that are peculiarly within the agency's—not this court's—expertise. *See In re Barr Labs. Inc.,* 930 F.2d 72, 74 (D.C.Cir.), *cert. denied,* 502 U.S. 906, 112 S.Ct. 297, 116 L.Ed.2d 241 (1991) (recognizing that "respect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities"). Absent a clear mandate from Congress that it intended the statutory deadlines at issue to be something other than directory, and absent a showing that Congress intended a clear right in Plaintiff to the relief sought, this court finds that Plaintiff has failed to state a claim entitling Plaintiff to the relief it seeks.

Accordingly, it is ORDERED:

1. Defendant's motion to dismiss (doc. 18) is GRANTED.

2. Plaintiff's complaint and this action are hereby DISMISSED.

3. The clerk shall enter judgment accordingly.