**Marshall J. ORLOFF, M.D.,**
**Plaintiff-Appellant,**

v.

**Max CLELAND, as Administrator, of the**
**Veterans Administration, et al.,**
**Defendants-Appellees.**

No. 80–5597.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1981.

Decided April 25, 1983.

Charles H. Dick, MacDonald, Halsted & Laybourne, San Diego, Cal., for plaintiff-appellant.

Peter W. Bowie, Robert E. Noel, Asst. U.S. Attys., San Diego, Cal., for defendants-appellees.

Before: FLETCHER, and ALARCON, Circuit Judges, and SOLOMON,* District Judge.

FLETCHER, Circuit Judge:

Orloff, a former part-time physician employee of a Veterans' Administration (VA) hospital, brought suit against the VA Administrator and various other individuals, in their official capacities, for violations of the Veterans' Preference Act and the Due Proc-

* Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

ess Clause of the Constitution. He alleged that the VA terminated his employment without regard to the procedural requirements of either the Veterans' Preference Act or the Due Process Clause of the Constitution. He further alleged that public disclosure of the VA's charges against him constituted a deprivation of a protected liberty interest without due process. Both parties moved for summary judgment. The district court awarded summary judgment to the defendants, holding that the requirements of the Veterans' Preference Act need not be met and that the requirements of the Due Process Clause had substantially been met. We reverse.

## FACTS

The Veterans' Hospital in San Diego employed Orloff as a part-time staff physician. His initial appointment began on September 16, 1973, for a term not to exceed thirteen months. The VA renewed his appointment for successive periods until it terminated him on November 3, 1978.

Orloff received notice of his termination of part-time employment effective July 29, 1978, by a letter dated July 3, 1978. The letter stated, as reasons for the termination, that an investigation at the Veterans' Hospital had revealed that Orloff had assigned VA hospital physicians to visit the Kern Medical Center on behalf of a private corporation, and that Orloff, himself, had visited Kern Medical Center on behalf of a private corporation when he was supposedly on duty at the Veterans' Hospital and that Orloff's records indicated that he had listed time spent in surgery at the University Hospital during the same period he was credited with duty at the Veterans' Hospital. The letter further noted that Orloff had no entitlement in the VA to any further review of the termination.

On July 17, 1978, Orloff wrote to Max Cleland, Chief Administrator of the Veterans Administration, requesting reconsideration of his termination. Shortly thereafter, the VA extended Orloff's termination date from July 29, 1978 to August 31, 1978. In August, the VA extended the termination date indefinitely to permit the VA General Counsel's Office to review the proposed termination. On November 1, 1978, Cleland approved Orloff's termination and Orloff's appointment terminated on November 3, 1978. The VA withheld $3,258.98 from his final paycheck, which is the amount of money the agency calculated that Orloff received for services he did not render. Following Orloff's termination, various newspapers reported the circumstances surrounding his discharge.

## STANDARD OF REVIEW

Summary judgment is proper only when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Hutchinson v. United States,* 677 F.2d 1322, 1325 (9th Cir. 1982).

## DISCUSSION

### I

The district court concluded that although the procedural requirements of the Veterans' Preference Act did not apply to Orloff, he had been afforded due process under both the Veterans Preference Act and the Due Process Clause of the United States Constitution. As discussed below, we do not agree with the district court that, even if we assume a property or liberty interest, there is sufficient evidence in the record to determine conclusively that the VA afforded Orloff procedural due process. Because of the conclusion we reach on this issue, we must reach the additional questions as to whether: (1) the procedural protections of the Veterans' Preference Act apply to Orloff; or (2) a liberty or property interest was implicated by the termination in the circumstances of this case.

### II

*A. The Veterans' Preference Act*

■ Orloff argues that the manner of his termination violated the procedural protec-

tions of the Veterans' Preference Act. *See* 5 U.S.C. § 7513.[1] Orloff is a veteran and would ordinarily be entitled to the protections of the Act. 5 U.S.C. §§ 2108(1)(A) and 2108(3)(A). The VA argues that these procedural requirements do not apply because the Administrator appointed Orloff pursuant to a statute authorizing the employment of part-time physicians "without regard to civil service or classification laws." 38 U.S.C. § 4114(a)(1). We agree with the VA. The plain language of the statute states that civil service laws shall not apply to part-time physicians employed by the VA and the Veterans Preference Act falls within the category of "civil service laws."[2]

■ Orloff argues that Congress meant the phrase "civil service laws" in the statute to mean the "classification" laws.[3] *See* 5 U.S.C. §§ 5101 *et seq.* and 5331 *et seq.* But the plain meaning of the term "civil service" laws would encompass a scope of laws broader than just the classification laws. *See, e.g.,* 5 U.S.C. § 3301 *et seq.* If Orloff's interpretation had been Congress's meaning, it is inexplicable why they would use the phrase "civil service or classification laws" if they thought the terms were equivalent. *See Tabor v. Ulloa,* 323 F.2d 823, 824

(9th Cir.1963) (Congress, in enactment of statute, is presumed to have used no superfluous words).[4]

■ Nevertheless, Orloff argues that his interpretation is supported by the legislative history of the Act. *See Heppner v. Alyeska Pipeline Service Co.,* 665 F.2d 868 (9th Cir.1981) (discussion of the appropriateness of considering legislative history in interpretation of facially clear statute). The legislative history indicates that, when § 4114 was enacted in 1946, the quality of health care provided by VA doctors concerned Congress. 91 Cong.Rec. 11656–65 (1945). It is true, as Orloff argues, that when Congress amended the statute in 1962 to include the phrase "civil service laws," it intended to give the VA authority to hire additional personnel on a fee-basis in order to obtain the services of qualified personnel without the constraints of the classification laws, which require equal pay for performances of similar jobs in the federal government. *See* 1962 U.S.Code Cong. & Admin. News 2101–03. Congress in adopting § 4114 also wanted to give the Administrator authority to employ or discharge doctors without the usual time-consuming and detailed civil service procedures. 91 Cong.

1. At the time of his discharge, these protections included at least thirty days advance written notice stating the reasons for the proposed personnel action, a reasonable time for answering the notice and for furnishing affidavits in support of the answer, and notice of an adverse decision. 5 U.S.C. § 7512(a). The Civil Service Reform Act of 1978, Pub.L.No. 95–454, Title II, § 204(a), 92 Stat. 1136, became effective January 13, 1979, and it modified the procedural protections of a preference eligible employee. *See* 5 U.S.C. § 7513.

2. The adverse action procedure for the Department of Medicine and Surgery is set forth in 38 U.S.C. § 4110. These procedural rights are applicable only to physicians appointed under the authority of 38 U.S.C. § 4104(1). They do not apply to part-time appointments, such as Orloff's, under § 4114(a)(1). *See Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 363–65 (9th Cir.1976).

3. In 1946, when Congress established the Department of Medicine and Surgery in the VA, the statute authorized the appointment of part-time physicians "without regard to the Classification Act of 1949." Congress amended the

statute in 1962 to provide that part-time physicians could be employed "without regard to civil service or classification laws." 38 U.S.C. § 4114.

4. Orloff also argues that the use of both terms is inconsistent. He begins with the premise that "civil service" laws are all those laws codified in Title 5. He then argues that it was redundant for Congress to include the phrase "classification laws," in § 4114 because it is also codified in Title 5. Moreover, he argues that several statutes codified in Title 5 have been applied to persons appointed pursuant to 38 U.S.C. § 4114(a).

It is not necessary, however, for us to decide the exact definition and scope of the term "civil service laws." It may be that all laws codified in Title 5 are not included in this definition, whether by the express language of particular statutes or because their history, purpose, and design indicate an intent not to include them in § 4114(a)'s definition of "civil service" laws. We hold only that the Veteran's Preference Act is encompassed within the definition.

Rec. 111656–65. This purpose is consistent with a Congressional desire to free the Administrator of the procedural requirements of such statutes as the Veterans' Preference Act. It allows the Administrator to obtain more easily the services of highly qualified personnel and to release more easily unsatisfactory personnel. *See Heppner,* 665 F.2d at 871–72 ("When the statutory language together with the legislative history makes one interpretation overwhelmingly more plausible than a second interpretation, there is no necessity that the legislative history explicitly rule out the second interpretation").

Finally, we note that the regulations promulgated by the Office of Personnel Management (and formerly by the Civil Service Commission) make this exclusion of the Veterans Preference Act even more explicit by listing the Act as one of the various statutes which does not apply to appointments made pursuant to § 4114(a). *See* 5 C.F.R. § 752.401(c)(14).[5] *See also* 5 C.F.R. § 212.101(b). In reviewing the administrative interpretation given a statute by the enforcing agency, the agency interpretation is entitled to deference. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Faulkner v. Watt,* 661 F.2d 809 (9th Cir.1981). We conclude that the procedural protections of the Veterans' Preference Act do not apply to part-time physicians, such as Orloff, hired by the VA under the authority of 38 U.S.C. § 4114(a).

*B. The Due Process Clause*

The threshold inquiry we must make is whether the VA's actions deprived Orloff of an interest in property or liberty. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

1. Property Interest in the Appointment

 To have a property interest in a governmental benefit, including employment, an individual must have an entitlement to the benefit. *Id.* at 577, 92 S.Ct. at 2709. Entitlements are created by "rules or understandings" from independent sources, such as statutes, regulations, and ordinances, or express or implied contracts. *Id.; Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

 An entitlement may spring from an understanding if the understanding is "mutually explicit." *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Orloff argues that the nature of his employment relationship with the VA and his twenty years of service created such an understanding. *See Stretten v. Wadsworth Veterans Hospital,* 537 F.2d at 361, 367 (9th Cir.1976). The VA argues that because Orloff worked past the initial expiration date of his appointment, October 15, 1978, any property interest in that appointment expired and Orloff had no legitimate expectation of a continued appointment sufficient to amount to a property interest. We reject this contention. Despite the apparent expiration date of Orloff's contract there may have arisen an understanding of continued employment based on prior treatment of Orloff or other VA employees sufficient to constitute a *de facto* property interest under *Perry v. Sindermann,* 408 U.S. at 593, 92 S.Ct. at 2694. Furthermore, after the VA initially terminated Orloff on July 3, 1978, it twice *postponed* his termination, and the final termination occurred after the VA had extended his appointment. A property interest may have been created by: (1) the appointment initially terminated in July, despite the fact that the VA did not implement the termination decision until November; or (2) the indefinite extension of Orloff's appointment after the initial termination decision. There remain material factual disputes concerning whether a "mutually explicit" understanding arose. That question must be resolved by the district court on remand.

---

5. The Civil Service Commission formerly had authority to prescribe and enforce regulations for the administration of the Veterans' Preference Act. This authority is now vested in the Office of Personnel Management, *see* 5 U.S.C. § 1302, which also has the authority to prescribe regulations pertaining to the adverse action procedures applicable to preference eligibles. *See* 5 U.S.C. § 7504.

**2. Liberty Interest**

■ Orloff also argues that the public disclosure of the VA's charges against him infringed a constitutionally protected liberty interest. The Supreme Court has recognized that a liberty interest is implicated where "a person's good name, reputation, honor or integrity is at stake." *Board of Regents v. Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. This court has stated:

> In the context of *Roth*-type cases, a charge which infringes one's liberty can be characterized as an accusation or label given the individual by his employer which belittles his worth and dignity as an individual and, as a consequence is likely to have severe repercussions outside of professional life.

*Stretten v. Wadsworth Veterans Hospital,* 537 F.2d at 366. Thus, when the government dismisses an individual for reasons that might seriously damage his standing in the community, he may be entitled to notice and a hearing. *Board of Regents v. Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12. The accusations, however, must be publicized. *See Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1101 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). Moreover, the accuracy of the charges must be contested. *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 777 (9th Cir.1982).

■ Charges of "moral turpitude" such as dishonesty or immorality are sufficient to implicate a liberty interest. *See id.; Stretten v. Wadsworth Veterans Hospital,* 537 F.2d at 365–66; *Gray v. Union County Intermediate Education District,* 520 F.2d 803, 806 (9th Cir.1975). *See also Board of Regents v. Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. The charges made by the VA against Orloff rise to this level. Orloff implicitly and explicitly disputes these charges of wrongdoing levelled at him by the VA. Material issues of fact remain concerning whether the VA publicized the reasons for Orloff's discharge.[6] On the record before us, it is not possible to affirm the grant of summary judgment on this issue.

**3. Property Interest in Salary**

■ Orloff also contends that the VA's unilateral deduction of money from his final paycheck, without any hearing, apparently based on the VA's belief that Orloff did not earn the money, violated procedural due process. It is obvious that Orloff had a property interest in his salary. *See Sniadach v. Family Finance Corp.,* 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969).

**III**

We next consider whether, if Orloff had a liberty or property interest at stake, he received procedural due process in the manner of his termination. The district court found that Orloff received notice of his imminent discharge, he had an opportunity to respond, the VA postponed the initial termination date twice to permit further investigation into his case, and he received notice of the adverse decision. The district court held that this sequence of events substantially fulfilled the requirements of due process. We disagree.

■ Due process is a flexible concept and its procedural requirements vary depending upon the particular deprivation. *See Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The determination of what procedures satisfy due process depends upon an analysis of the particular case in accordance with the three-part balancing test outlined in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct.

---

**6.** The deposition of one hospital administrator, submitted on the motion for summary judgment, indicates that he did speak with the press about Orloff's termination. It is unclear what he actually told the press. This evidence, together with the submission of newspaper articles reporting the circumstances of the discharge and charges of wrongdoing, is sufficient to create a material factual dispute concerning whether the VA publicized the reasons for the discharge.

We reject the VA's argument that we may not consider the newspaper articles because they are not properly authenticated. Newspaper articles are self-authenticating. Fed.R. Evid. 902(6).

893, 47 L.Ed.2d 18 (1976). The factors that must be considered are: (1) the private interest that will be affected; (2) the risk of an erroneous deprivation of that interest through the procedure used; (3) the fiscal and administrative burdens that any additional procedural requirements would entail. *Id.* at 335, 96 S.Ct. at 903. On the record before us, application of these principles to Orloff's situation does not compel the conclusion that the procedures employed by the VA to terminate Orloff comported with due process.

First, there is a strong presumption that a public employee is entitled to notice and an opportunity to be heard *before* being deprived of a liberty or property interest. *Vanelli v. Reynolds School District No. 7,* 667 F.2d at 778. There is no allegation or indication in the record that Orloff's continued presence at the Veterans Hospital constituted a threat to the welfare of patients or the smooth operation of the hospital. *Cf. Stretten v. Wadsworth Hospital,* 537 F.2d 361, 368–69 (9th Cir.1976) (charge of incompetence and inability to cooperate with other personnel). Moreover, the risk of an erroneous deprivation is substantial if Orloff is not given an opportunity to respond to the charges and confront the evidence before the termination. The balance between the fiscal burden on the government of continuing Orloff's employment pending a hearing and Orloff's monetary loss and potential damage to his reputation may weigh in favor of a pretermination hearing. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. On the record before us, we cannot agree that a post-termination hearing is clearly sufficient.

Even were we to assume that a post-termination hearing would suffice, there remain factual disputes concerning whether the VA accorded Orloff any hearing at all. We note that the initial notice of termination stated specifically that he had no appeal within the VA. It is unclear, even after the VA extended the termination date, whether the VA actually reviewed the merits of the termination decision or merely assured itself that its own procedural requirements, if any, had been followed. There is no indication in the record that Orloff was invited to submit evidence, even in the form of affidavits, on his behalf or to examine the evidence against him. *Cf. Ong v. Tovey,* 552 F.2d 305, 308 (9th Cir.1977) (meetings held by the Public Health Service satisfied due process requirement that the decision-maker have enough data before him that his decision to terminate is not arbitrary, capricious, or unfair). Moreover, although due process does not always require a full adversary hearing, *see Heath v. Redbud Hospital District,* 620 F.2d 207, 212 (9th Cir.1980), it is unclear without first determining the nature of Orloff's property or liberty interest whether such a hearing would be warranted in these circumstances, or to what extent various procedural safeguards, *e.g.,* the right to confront and cross-examine witnesses, should be sacrificed.

The central meaning of procedural due process is that parties whose rights are to be affected are entitled to be heard at a meaningful time and in a meaningful manner. *Vanelli,* 667 F.2d at 779–80; *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). On the record before this court, it is impossible to determine whether the VA afforded Orloff a meaningful opportunity to be heard in response to the charges made against him.

With regard to the deductions from Orloff's salary made by the VA, the district court must also balance the relevant interests to determine the appropriate procedural protections that Orloff should be afforded. *See Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349; *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18; *Elliott v. Weinberger,* 564 F.2d 1219, 1230 (9th Cir.1977), *aff'd in part and rev'd in part on other grounds sub nom. Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). The VA has unilaterally determined that Orloff breached his employment agreement and awarded itself judgment. From the record, it does not appear that the VA provided Orloff with either a prior or a post-termination hearing on this issue.

■ We hold that if Orloff did have a liberty or property interest in his continued appointment, material issues of fact remain concerning whether the procedures employed in this case to terminate him comported with due process. On remand, the district court must (a) determine what procedures the VA used to review the termination decision; and (b) apply the three-part balancing test of *Mathews* to determine whether the procedures were sufficient in this context. Because Orloff did have a property interest in his wages, the district court must determine the procedural protections that the VA is required to afford, in order that Orloff have an opportunity to protect that interest.

## CONCLUSION

Material issues of fact exist as to whether: (1) Orloff had a property interest in his appointment; (2) the manner of Orloff's termination implicated a liberty interest; and (3) if, he had a protectible interest, the VA accorded Orloff procedural due process upon his termination. The grant of summary judgment is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.