Raymond **TAMURA** and Darlene **Tamura, Plaintiffs,**

v.

**FEDERAL AVIATION ADMINISTRATION, Elizabeth Hanford Dole, in her capacity as Secretary of the Department of Transportation, U.A. Garred Sexton, individually and in his capacity as Regional Flight Surgeon, Defendants.**

Civ. No. 87–0072.

United States District Court, D. Hawaii.

July 22, 1987.

Smith Himmelmann, Elbridge W. Smith, Paul Dunn Lynch, Honolulu, Hawaii, for plaintiffs.

Daniel Bent, Mark J. Bennett, U.S. Attorneys Office, Honolulu, Hawaii and Jerome P. Jones, Trial Atty., Office of the Chief Counsel, Federal Aviation Admin., Washington, D.C., for defendants.

ORDER GRANTING IN PART AND DE-NYING IN PART THE DEFEND-·ANTS' MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

The defendants' motion for dismissal or summary judgment came on for hearing

before this court on May 18, 1987. Mr. Elbridge Smith appeared on behalf of the plaintiffs and Ms. Melanie Miller appeared on behalf of the defendants. The plaintiffs' complaint in the instant action asserts ten claims. Although the defendant has moved for dismissal or summary judgment as to each of those ten claims, the plaintiffs have asked this court to defer consideration of the tort claims as these claims are currently under administrative review pursuant to the Federal Tort Claims Act. This court will accede to the plaintiffs' request and forebear from considering the motion for dismissal or summary judgment as to the tort causes of action until those claims are ripe for judicial review and the motion as to those claims has been argued to this court. Accordingly, this court's instant ruling is restricted to the plaintiffs' constitutional and Administrative Procedure Act causes of action.

## I.

Under the Federal Aviation Act of 1958, 49 U.S.C. § 1422, Congress has authorized the Federal Aviation Administration (FAA) to issue pilot's licenses. The Act further authorizes the FAA to implement the provisions of the Act by enacting appropriate regulations to govern the area of the issuance of pilot's licenses.

As part of the regulatory licensing scheme, the FAA requires every applicant for a pilot's license to undergo a medical examination. Only applicants who are found to be physically fit are eligible to receive a pilot's license. Medical examinations conducted for the purposes of determining eligibility for a pilot's license must be conducted by an FAA designated physician who is referred to as an Aviation Medical Examiner (AME). AMEs are designated by the FAA for a period of one year, subject to annual extensions of one year. AMEs are not employees of the FAA.

One of the plaintiffs herein, Raymond Tamura, was an AME from 1961 until 1983. (For the purposes of this order, Raymond Tamura will be referred to as the "plaintiff." Mr. Tamura's co-plaintiff is his wife.) In April of 1983, the plaintiff was informed that he would not be redesignated as an AME when his then current designation expired on July 31, 1983 because he was not engaged in a full-time practice of medicine. The plaintiff was told that his designation would not be renewed because of an FAA policy which was set forth in a written internal directive of the FAA. The internal directive of the FAA which set forth the policies with respect to the designation, redesignation, and termination of AMEs states that all persons who desire to be designated as an AME "must be engaged in full-time practice of medicine." FAA Order 8520.2C, ¶ 8(b).

Although the full-time practice of medicine had been a requirement for AME designation throughout the duration of the plaintiff's designation as an AME, the requirement had apparently been waived in the plaintiff's case. The record on file indicates that the plaintiff had been engaged in a part-time practice of medicine since at least 1965 and that the FAA Regional Flight Surgeon responsible for designating AMEs in Hawaii from 1965 until 1982, Dr. Casimer Jasinski, knew about the plaintiff's part-time practice. Indeed, an affidavit sworn out by Dr. Jasinski and attached by the plaintiffs to their memorandum in opposition to the instant motion states that "[d]uring my entire tenure as Regional Flight Surgeon Dr. Tamura never attempted to hide his hours of operation and [employees of] the FAA always knew what those hours were" and that "Dr. Tamura was a valuable and competent Senior Aviation Medical Examiner and I never even considered not renewing his designation." Jasinski Affidavit, ¶¶ 11, 8.

The decision not to redesignate the plaintiff as an AME for the year beginning August 1, 1983 was made by Dr. Jasinski's successor as Regional Flight Surgeon, Dr. Garred Sexton. According to the defendants, the fact that the plaintiff was engaged in a part-time practice of medicine first came to light as a result of an informal investigation by Dr. Sexton. Shortly after Dr. Sexton became aware of the fact that the plaintiff was not in compliance with the FAA requirement that AMEs be

engaged in the full-time practice of medicine, the plaintiff received a letter from Dr. Sexton stating that the FAA would not renew his designation when it expired on July 31, 1983.

In May of 1983, the plaintiff sought review of Dr. Sexton's decision not to renew his AME designation by Dr. Sexton's supervisor, the Federal Air Surgeon. By letter in early June of 1983, the Federal Air Surgeon informed the plaintiff that the Regional Flight Surgeons had been "delegated the authority to designate and redesignate physicians as AMEs ..." Consequently, the plaintiff was informed by the Federal Air Surgeon that it would be inappropriate for him to intervene in Dr. Sexton's decision not to redesignate him. Subsequently, in mid-June of 1983, the plaintiff wrote to Dr. Sexton and asked him to reconsider his decision not to redesignate him as an AME. At the end of June of 1983, the plaintiff was informed by Dr. Sexton that the decision not to renew his designation as an AME would not be modified. Thus, the plaintiff's designation as an AME expired on July 31, 1983, and thereafter he did not have the authority to conduct aviation medical examinations.

On February 5, 1987, the plaintiffs filed the instant suit in federal court. Their complaint, as noted above, states ten counts. The non-FTCA claims which came on for hearing before the court are: Count One, a claim for violation of the Administrative Procedure Act, 5 U.S.C. § 558; Counts Two, Four, and Six which allege violations of Dr. Tamura's constitutional rights to procedural due process as set out in FAA Order 8520.2C; and Counts Three and Five which allege violations of Dr. Tamura's constitutional rights to equal protection of the laws.

## II.

It should be noted that the defendants' motion has been styled as a motion to dismiss or, in the alternative, a motion for summary judgment. The defendants have appended substantial evidentiary materials to their motion. The plaintiffs request this court to view the instant motions as motions for summary judgment since "defendants' motion depends on matters outside of the pleadings." The plaintiffs have also appended evidentiary material to their memorandum in opposition to the motion. Because this court has gone outside of the pleadings to resolve the instant motion, and has relied upon evidence submitted by the parties, it is appropriate for this court to consider the motion as a motion for summary judgment. *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed. 2d 569 (1972).

As a preliminary matter, this court finds that the constitutional causes of action are not time-barred, despite the defendants' argument to the contrary. The plaintiffs' constitutional claims are *Bivens* type actions for which there is no federal statute of limitations. Accordingly, a federal court is to apply the most closely analogous state statute of limitations. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975).

In *Marshall v. Kleppe*, 637 F.2d 1217 (9th Cir.1980), the Ninth Circuit was confronted with the proper statute of limitations to be applied to a *Bivens* action arising in California. The court considered three possibilities: (1) the California statute dealing with actions for personal injuries, (2) the California statute dealing with an action upon a liability created by a statute, and (3) the California "catch-all" statute. The court expressly held that the personal injury and statutorily created liability statutes were inapplicable to a *Bivens* action. Thus, the court applied the California "catch-all" statute. In the instant case, the defendants argue that the court should apply Hawaii's personal injury statute of limitations or statutory liability statute of limitations. Both of these statutes would time-bar the constitutional claims in the instant case. The Ninth Circuit's *Marshall* opinion, however, teaches that both statutes of limitation proposed by the defendants would be inappropriate and that the appropriate statute of limitations to apply to the constitutional causes of action is Hawaii's catch-all statute of six years, Hawaii Rev.Stat. § 657–1(4). This

suit was filed within the applicable six year limitation period and, accordingly, the constitutional claims are not time-barred.

### A. The Procedural Due Process Causes of Action

Counts Two, Four, and Six of the plaintiffs' complaint allege violation of Dr. Tamura's constitutional right to procedural due process as guaranteed by the Fifth Amendment to the United States Constitution. The plaintiff's theory seems to be that FAA Order 8520.2C established a property right in Dr. Tamura's redesignation and that Dr. Tamura was deprived of this property right without the process guaranteed him by FAA Order 8520.2C.

■ A colorable procedural due process claim only lies when a plaintiff can make a preliminary showing that he has a property interest which he or she has been deprived of without due process of law. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Dorr v. County of Butte,* 795 F.2d 875, 876 (9th Cir.1986), citing *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). "[T]o determine whether due process requirements apply in the first place ... [w]e must look to see if the interest [sought to be protected] is within the [Fifth] Amendment's protection of liberty and property." *Roth, id.* at 571, 92 S.Ct. at 2706.

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it ... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ..."

*Id.* at 577, 92 S.Ct. at 2709.

The defendants' motion for summary judgment in the instant case seems to be premised on the theory that the plaintiff had no property interest in redesignation to AME status and, correspondingly, no right to procedural due process when he was not redesignated. This theory finds evidentiary support in the internal regulations and directives of the FAA which are rife with statements that an AME designation is valid for one year only. One FAA regulation provides in pertinent part that "a designation as an Aviation Medical Examiner is effective for 1 year after the date it is issued, and may be renewed for additional periods of 1 year in the Federal Air Surgeon's discretion." 14 C.F.R. § 183.15(a). The regulation further provides that "[a] designation ... terminates for any reason the Administration considers appropriate." 14 C.F.R. § 183.15(d)(6). Furthermore, an internal FAA order, FAA Order 8520.2C, ¶ 11, states that "[d]esignations of physicians as AMEs are effective for one year after the date they are issued unless terminated earlier by the agency or the designee." Furthermore, the application form for AME designation states that "[a]ll designations are for one year ... Final determination relative designation to the reappointment of an AME [sic] is made by the FAA." Thus, there is evidentiary support for the defendants' argument that the plaintiff did not have a property interest in redesignation to AME status.

■ Although the foregoing analysis indicates that the plaintiff may not be able to find the source of his property interest in certain FAA regulations and policies, this court finds that other FAA regulations, as well as Hawaii state law, may give the plaintiff a property interest in redesignation to AME status that he cannot be deprived of without due process of law. In *Kinoshita v. Canadian Pacific Airlines,* 724 P.2d 110 (Haw.1986), the Hawaii Supreme Court held that the nature of a certain employment relationship may give rise to contractual obligations on the part of an employer that run in favor of his or her employees, even in the absence of an express employment contract. Although the *Kinoshita* case dealt specifically with the issue of whether an employee manual could give rise to an implied employment

contract, the Hawaii Supreme Court's opinion is written very broadly and seems to impose contractual obligations on an employer whenever that employer creates "a situation instinct with obligation." *Id.* at 117.

It is clear that the instant case is not directly on all fours with the *Kinoshita* case. As noted above, Dr. Tamura is not an employee of the FAA and there is no employment manual alleged to be the source of the obligations in the instant case. Nevertheless, this court finds that the FAA may have created a "situation instinct with obligation" in its relationship with the plaintiff. Specifically, Dr. Jasinski, the FAA Regional Flight Surgeon who was authorized to designate and redesignate AMEs in Hawaii between 1965 and 1982, redesignated the plaintiff to AME status on eighteen occasions. According to Dr. Jasinski's affidavit, such redesignation was made with full knowledge that the plaintiff was not engaged in the full-time practice of medicine. Dr. Jasinski's affidavit, excerpted above, is evidence of the fact that the Regional Flight Surgeon had given special consideration to the plaintiff's case and had decided to dispense with the full-time practice of medicine requirement. This evidence has in no way been controverted by the defendants during the course of this litigation. The special dispensation given to Dr. Tamura may have given rise to a "situation instinct with obligation" in which the FAA could not fail to redesignate the plaintiff as an AME merely because he was engaged in the part-time practice of medicine, unless the FAA afforded the plaintiff procedural due process protections.

This court finds that the "situation instinct with obligation" which may have been created by the F.A.A. in its numerous redesignations may have created a property interest protectable by the Due Process Clause because it gave Dr. Tamura a legitimate claim of entitlement to continued redesignation as an AME. *Cf. Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) (a property interest in employment can be created by implied contract), *Ashton v. Civiletti,* 613 F.2d 923, 928 (D.C.Cir.1979) (federal employee

has property interest in continued employment because employer fostered rules and understandings which led employee to believe he would be terminated for job-related reasons only), *Paige v. Harris,* 584 F.2d 178, 181 (7th Cir.1978) (federal employee's property right "might be implicit in the overall workings of a particular government employer").

The factual situation in the instant case is similar to the factual situation presented to the Ninth Circuit in *Orloff v. Cleland,* 708 F.2d 372 (9th Cir.1983). In *Orloff,* a former part-time physician employee of a Veterans' Administration hospital brought suit against the Veterans' Administration, claiming, *inter alia,* that his termination had violated his right to procedural due process. The plaintiff in *Orloff* had originally been appointed to his Veterans' Administration post for a period not to exceed thirteen months. The original appointment was renewed a number of times, however, until the plaintiff was terminated five years and two months after the date of his original appointment. Although the Veterans' Administration argued that the plaintiff only had a property interest in employment for the initial thirteen month appointment, the Ninth Circuit found that the plaintiff might have had a protectible property interest in continued employment at the time that he was terminated, holding that "[d]espite the apparent expiration date of [the plaintiff's] contract there may have arisen an understanding of continued employment based on prior treatment of [the plaintiff] ... sufficient to constitute a *de facto* property interest ..." *Id.* at 377. Similarly, in the instant case, Dr. Tamura's expectation of continued designation as an AME, arising from his prior treatment by the FAA, may have been sufficient to constitute a *de facto* property interest in continued designation.

This court further finds that FAA regulations, other than those regulations concerning the one year tenure of AMEs which were discussed above, also may have given rise to a protectible property interest. A letter sent by the FAA to the plaintiff and attached to the plaintiff's memorandum in opposition to the motion for summa-

ry judgment as Exhibit O states that continued full-time practice of medicine is an "acceptable performance standard" for redesignation. FAA Order 8520.2C ¶ 13.b(4)(b)(1) states that the FAA's decision not to redesignate an AME for professional and/or administrative performance related reasons will only be made after certain procedural safeguards have been complied with. If the plaintiff is correct that ¶ 13.b(4)(b)(1) applies to his case, then he may have a property interest in redesignation deriving from the fact that the FAA has limited its own discretion in deciding whether or not to redesignate an AME. Having set forth procedural safeguards which will apply when an AME is subject to non-redesignation for sub-standard performance, the FAA cannot selectively abide by those procedures. An AME to whom those procedures apply has a legitimate claim to application of the procedures which gives rise to a property interest. *See, e.g., Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (an official body "creates a protected ... interest by placing substantive limits on official discretion").

■ The defendants do not argue that the plaintiff was accorded the procedural safeguards that he was due under FAA Order 8520.2C ¶ 13.b(4)(b)(1). Rather the defendants argue that the full-time practice of medicine is not a performance standard, but rather a minimum qualification for AME designation, and that therefore FAA Order 8520.2C ¶ 13.b(4)(b)(2) applies. FAA Order ¶ 13.b(4)(b)(2) does not impose upon the FAA the same duty to follow procedural safeguards that is imposed upon the FAA by ¶ 13.b(4)(b)(1). As a general rule, an agency's interpretation of its own regulations is entitled to great judicial deference. "Where a possible ambiguity exists [with respect to the interpretation of an agency regulation], the agency's interpretation is controlling unless it is plainly erroneous or inconsistent with the regulation." *Medberry v. Hegstrom*, 786 F.2d 1389, 1391 (9th Cir.1986). As noted above, the defendants argue that FAA Order 8520.2C is correctly interpreted to mean that the full-time practice of medicine *is not* a perform-

ance standard. This interpretation, however, is flatly contradicted by the FAA letter referred to above which states that full-time practice of medicine *is* a performance standard. This court finds that the interpretation suggested by the FAA letter is the more credible interpretation, especially given the fact that the FAA's current interpretation may be tailored to enable the FAA to elude liability for the procedural due process violation. Thus, this court finds that the FAA regulations contained in FAA Order 8520.2C ¶ 13.b(4)(b)(1) apply in the instant case and may have created a protectible property interest held by the plaintiff.

The foregoing analysis indicates that the evidentiary materials appended to the plaintiffs' memorandum in opposition to the defendants' motion tend to establish the fact that the plaintiff had a property interest in continued designation as an AME. This property interest may have arisen from the operation of state law as well as the FAA's own regulatory scheme. The Supreme Court of the United States has held that "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount." *Roth*, 408 U.S. at 569–70, 92 S.Ct. at 2705. With respect to the type of hearing which is constitutionally guaranteed prior to the deprivation of a property interest, the Supreme Court has held that

"[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. The constitutional requirement of opportunity for *some* form of hearing before deprivation of a protected interest, of course, does not depend upon such a narrow balancing process."

*Id.* at 2705 n. 8 (citations omitted) (emphasis in original). *See also Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. Thompson Building Materials, Inc.*, 749 F.2d 1396, 1404 (9th Cir.1984) ("due process requires an opportunity to be heard in a meaningful time and manner and some form of hearing certainly is required before an individual is deprived of a property interest").

In the instant case, the plaintiff was not afforded any hearing at all regarding the decision not to renew his designation as an AME. The plaintiff was informed of the decision by the regional flight surgeon by letter, and although the plaintiff wrote letters contesting the decision, he was never given an opportunity to present evidence at a hearing. Having found that the plaintiff may have a protectible property interest in continued designation as an AME, and having found that the plaintiff was not afforded a hearing prior to the decision not to redesignate him as an AME, this court recognizes that the plaintiff has a colorable procedural due process claim. Accordingly, the defendants' motion for summary judgment on Counts Two, Four, and Six of the plaintiffs' complaint will be denied.

### B. *The Administrative Procedure Act Cause of Action*

Count One of the plaintiffs' complaint alleges that the FAA's decision not to redesignate Dr. Tamura as an AME violates the Administrative Procedure Act, 5 U.S.C. § 558. The statute relied upon by the plaintiff provides, in pertinent part, that

"(c) When application is made for a license required by law, the agency, with due regard for the rights and privileges of all the interested parties or adversely affected persons and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this title or other proceedings required by law and shall make its decision. Except in cases of wilfullness or those in which public health, interest, or safety requires otherwise, *the withdrawal, suspension, revocation or annulment of a license* is lawful only if, before the agency proceedings therefor, the licensee has been given—

(1) notice by the agency in writing of the facts or conduct which may warrant the action; and

(2) opportunity to demonstrate or achieve compliance with all lawful requirements."

(Emphasis added.)

Courts have been sensitive to the fact that the underscored language in the above quoted statute does not include a decision not to renew a license. Thus, in the case of *White v. Franklin,* 637 F.Supp. 601 (N.D. Miss.1981), the trial judge found that the FAA's decision to terminate an FAA flight examiner during the course of a one year designation required compliance with the Administrative Procedures Act. The trial judge limited his holding, however, by noting that "[t]ermination during the period of designation is distinguishable from non-renewal of a designation after expiration of the period, and only the former is covered by 5 U.S.C. § 558(c)." *Id.* at 608. Similarly, in *Bankers Life & Casualty Co. v. Callaway,* 530 F.2d 625, 634 (5th Cir.1976), the court ruled that 5 U.S.C. § 558(c) "appears to contemplate use of the notice and hearing procedure only when some sanction is to be imposed on the licensee." The court specifically rejected an argument that 5 U.S.C. § 558(c) was intended to apply to cases involving an agency's "failure to renew an existing license." *Id.* at 635.

▪ In the instant case, the plaintiff attempts to circumvent the body of law construing 5 U.S.C. § 558(c) not to apply to failure to redesignate by arguing that he was terminated by Dr. Sexton in April of 1983. This court finds, however, that there is insufficient evidence in the record which would warrant a finding that the plaintiff was terminated, rather than not redesignated, from his AME status. For a nonmoving party to raise a genuine issue of material fact to defeat summary judgment, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* This court finds that the plaintiff has not carried his burden; that is, the plaintiff has not established that an

issue of material fact exists as to whether the plaintiff was terminated or not redesignated. The evidence simply does not raise a genuine issue that the plaintiff was terminated.

Virtually all of the evidentiary materials submitted in support of and in opposition to this motion indicate that the parties had a mutual understanding that the FAA had chosen not to redesignate Dr. Tamura as an AME. A note prepared by Dr. Sexton for his own files in April of 1983 states that Dr. Tamura would not be redesignated in July of 1983 when his current designation expired. (Defts' Memorandum (DM), Attach. 2) The April 27, 1983 letter from Dr. Sexton to Dr. Tamura, as well as subsequent letters from Dr. Sexton to Dr. Tamura, stated that Tamura's designation would not be renewed when it expired. (DM, Attach. 3, 11, 14, 17) Various letters from Dr. Tamura to FAA officials indicate that the plaintiff himself had an understanding that his designation was not to be renewed, rather than an understanding that he was being terminated. (DM, Attach. 4, 5, 8, 9; Plaintiffs' Memorandum in Opposition (PM), Exhibit H.) A letter from the Federal Air Surgeon referred to Dr. Sexton's action as a decision not to redesignate Tamura. (DM, Attach. 7) A letter from Donald Engen, administrator of the FAA, to Mrs. Tamura refers to the FAA's action with respect to Dr. Tamura's AME certificate as a decision not to redesignate Dr. Tamura. (DM, Attach. 19) An affidavit sworn out by Dr. Jon Jordan, Acting Federal Air Surgeon in the FAA, and attached to the defendants' memorandum in support of summary judgment, avers that Dr. Tamura's designation was not renewed. (DM, Attach. 22) Indeed, an affidavit sworn out by Dr. Tamura indicates that he conducted airman medical examinations throughout July of 1983 and did not return his AME certificate to the FAA until August of 1983. This affidavit surely is inconsistent with Dr. Tamura's allegation that he was terminated by the FAA in April of 1983.

The only evidence which the plaintiffs offer to prove that Dr. Tamura was terminated, rather than not redesignated, is a July 25, 1983 letter from Dr. Sexton to Dr. Tamura informing Dr. Tamura that "you were notified that your designation would not be renewed after it expired April 30, 1983 ... and you are no longer designated to do airman physicals." As noted above, Tamura's designation did not expire until July 31, 1983. The defendants argue that Dr. Sexton's July 27, 1983 letter to Dr. Tamura is only evidence of the fact that Sexton was mistaken regarding the expiration of Tamura's designation. The totality of the evidence, therefore, does not raise a genuine issue of material fact that Dr. Tamura was terminated rather than not redesignated. Thus, the plaintiffs' attempt to raise a genuine issue of material fact regarding whether Tamura was terminated or not redesignated does no more than raise a "metaphysical doubt as to the material facts." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d at 630. In the instant case, the evidence leads to only one reasonable conclusion: that the FAA decided not to redesignate Dr. Tamura as an AME. Such a decision not to redesignate does not come within the scope of 5 U.S.C. § 558(c). Accordingly, the defendants' motion for summary judgment on the plaintiffs' Administrative Procedure Act claim will be granted.

### C. *The Equal Protection Causes of Action*

Counts Three and Five of the plaintiffs' complaint states claims for alleged deprivation of Dr. Tamura's constitutional rights to equal protection of the laws resulting from the FAA's decision not to renew his designation as an AME. The plaintiffs' equal protection claim seems to be premised on the fact that the FAA has designated as AMEs physicians other than Dr. Tamura who are not engaged in the full-time practice of medicine. Thus, the plaintiffs claim that the FAA has treated Dr. Tamura differently than other AME applicants who are similarly situated in that they do not have full-time private medicine practices.

Indeed, in an affidavit sworn out by Dr. Jon Jordan, Acting Federal Air Surgeon for the FAA, and attached to the defendants' reply memorandum in support of the motion for summary judgment, it is stated that "there are approximately 100 physicians who are not engaged in full-time practice among the approximately 7500 A.M.E.s in the United States."

"[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed. 2d 520 (1976). Rights which are considered to be "fundamental" are rights such as the right to vote, *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), the right to interstate travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the rights guaranteed by the First Amendment to the United States Constitution, *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) and the right to procreate, *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). "Suspect classes" are classes such as those which are distinguished by their alienage, *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), their race, *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), or their ancestry, *Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948). When a fundamental right or a suspect class is not implicated in a classification, a court will examine the classification "under the rational basis standard." *Murgia,* 427 U.S. at 314, 96 S.Ct. at 2567. "Perfection in making the necessary classifications is neither possible nor necessary" and such classifications are "presumed to be valid." *Id.* In the instant case, the plaintiff has not claimed that he has been singled out for disparate treatment under the FAA regulations for a reason which is related to his membership in a suspect class or that the FAA's decision not to redesignate the plaintiff has violated one of his fundamental rights. The Supreme Court's *Murgia* opinion counsels that in a case such as the instant case, the challenged classification should be examined only to see if it has a rational basis.

■ The affidavit of Dr. Jordan establishes a rational basis for the FAA's regulations with respect to the full-time practice requirement, as well as a rational basis for the exemptions from this requirement. According to Dr. Jordan,

"[t]he provision specifying full-time practice arises from the FAA's policy of assuring that its AME's conduct their examinations in a professional, fully equipped setting, that they are readily accessible if the FAA needs to contact them, that they are available to applicants during regular business hours, that they maintain currency in their ability to diagnose disease conditions that may adversely affect aviation safety, and that they maintain the capability to provide treatment and referral service for applicants."

Thus, there is a rational basis to the distinctive treatment given by the FAA to full-time practitioners and part-time practitioners who apply for AME designation.

With respect to the fact that the FAA has exempted some physicians from the full-time practice requirement, Dr. Jordan states that among those exempted are "persons who are airline medical directors, medical directors of corporations which have airman employees, and employees of the government, including the FAA, who exercise the designation in the performance of their governmental duties." Dr. Jordan goes on to swear in his affidavit that "there may be a few exceptions in the system who do not fall into one of the above situations but whose services the Regional Flight Surgeon has determined, within his discretion, to be needed."

This court notes that Dr. Jasinski, former Regional Flight Surgeon for the region

containing Hawaii, found that Dr. Tamura's exemption from the full-time practice of medicine requirement was "rational." This court further notes, however, that the overall purpose of the full-time practice of medicine classification, as set forth in the affidavit of Dr. Jordan, is a "rational classification" within the meaning of equal protection jurisprudence. Although it may seem inequitable that Dr. Tamura was not redesignated as an AME by Dr. Sexton after he had been redesignated on eighteen previous occasions by Dr. Jasinski, this wrong is simply not subject to redress under the Equal Protection Clause on the facts of this case. As noted above, however, Dr. Tamura may seek recourse under the Due Process Clause. Thus, because the plaintiff has not alleged that the FAA's general requirement that AMEs be engaged in the full-time practice of medicine denies him of a fundamental right, or that he has been discriminated against because of his membership in a suspect class, the defendants' motion on the equal protection causes of action will be granted.

### III.

WHEREFORE, it is hereby ORDERED that the defendants' motion for summary judgment as to Counts Two, Four, and Six of the plaintiffs' complaint will be DENIED. It is further ORDERED that the defendants' motion for summary judgment as to Counts One, Three, and Five of the plaintiffs' complaint will be GRANTED.